**Benjamin CLARK, Petitioner–Appellant,**

**v.**

**Richard C. SMITH, District Director of the Immigration and Naturalization Service, U.S. Immigration and Naturalization Service, Respondents–Appellees.**

**No. 91–35576.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1992.

Decided June 22, 1992.

William A. Kinsel, Perkins Coie, Seattle, Wash., for petitioner-appellant.

Peter O. Mueller, Asst. U.S. Atty., Seattle, Wash., for respondents-appellees.

Before HUG, NOONAN, and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Benjamin Clark appeals the denial of the district court's denial of his petition for habeas corpus to release him from detention by Richard Smith, Director of the Immigration and Naturalization Service (INS). Clark advances the novel claim that the INS has no authority to detain him during the course of an appeal by the INS from a decision of an immigration judge. Clark's claim evokes sympathy but in the end is not persuasive. We affirm the judgment of the district court.

## FACTS

According to Clark's application for asylum, the following are facts:

Clark was born in Bridgetown, Barbados on October 28, 1966, but at the age of four moved to Ghana where he grew up, attended schools and engaged in political activity. In particular, he became a friend of Major Courage Quashigah, who engaged in an attempted coup against the government of Lt. Jerry Rawlings. In September 1989, he, Clark, was questioned and tortured regarding the coup. He was released after two weeks. At the request of Mrs. Quashigah, he stored four large trunks belonging to her husband. He was again arrested and again beaten, but released after three months. Security forces of the government then searched his house and found the four trunks and discovered that they concealed guns. Clark fled the country.

He proceeded to Japan where in Tokyo he encountered Rawlings' wife, who personally threatened him. From Japan he proceeded to Bangkok, Thailand and from Bangkok flew to Portland, Oregon, intending to proceed to Canada. He was in possession of a passport issued by the United Kingdom and a C–1 visa issued by the United States for "an alien in transit." He was intercepted by officials of the INS on August 4, 1990 at the Portland airport and was detained from inquiry by an Immigration Judge.

At a hearing on October 31, 1990, Immigration Judge Penny M. Smith determined that Clark was an applicant for admission who appeared to be excludable from the United States on two grounds—first that he was an alien who by fraud or willfully misrepresenting a material fact had procured a visa for entry into the United States, 8 U.S.C. § 1182(a)(19), and that he was an immigrant who at the time of application for admission was not in possession of a valid unexpired passport or other suitable travel documents, 8 U.S.C. § 1182(a)(20). In reaching that determination the immigration judge relied on Clark's testimony as well as on documents relating to his passports and Barbados citizenship.

Clark then applied for asylum and withholding of deportation, offering the testimony above summarized as to his political activities and the response of the Rawlings government. The immigration judge accepted Clark's testimony about the documents in his possession and found him excludable only under 8 U.S.C. § 1182(a)(20) as not possessing a valid passport. At the same time the judge found Clark's testimony "candid for the most part, consistent, credible." Immigration Judge Smith held that Clark had established that he "has good reason to fear that he will be the victim of persecution and will be singled out for persecution." On April 5, 1991 she granted his application for asylum and for withholding of deportation.

The INS appealed to the Board of Immigration Appeals on April 11, 1991. Counsel for Clark wrote to Richard Smith, the District Director of the INS, requesting that Clark be released from detention. By letter of April 23, 1991 the request was denied. Clark was held and continues to be held in facilities in downtown Seattle, which are conceded by the government to be "jail-like." Clark then petitioned the district court for a writ of habeas corpus.

On May 30, 1991 the court heard argument and denied the petition. Clark appealed to this court.

Subsequent to his appeal, the Board of Immigration Appeals reversed the immigration judge as to the grant of asylum, but continued to give Clark withholding of deportation to Ghana. The proceedings before the Board are still open to motions for reconsideration.

### ANALYSIS

■ *Two Preliminary Points.* Two points have arisen since Clark filed his petition for habeas corpus. The first is mentioned above, that the Board of Immigration Appeals has reversed the grant of political asylum. Clark is now excludable, and it could be argued that his petition is moot. He nonetheless maintains that he has still been granted withholding of deportation, so he cannot be immediately sent out of the country. His detention will continue and therefore his case is not moot. We agree. He is still being physically held by the INS.

■ The other point is that we requested supplemental briefing on the question of whether Clark had made "an entry" into the country when he landed in Portland, Oregon in the course of the trip that he intended to complete in Canada. The INS has responded by pointing to the statute that provides: "Every alien ... who may not appear to the examining immigration officer at the point of arrival to be clearly and beyond a doubt entitled to land shall be detained." 8 U.S.C. § 1225(b). The statute extends to every alien landing in the United States. The Attorney General is empowered to take testimony even as to an alien who is "passing through" the United States. 8 U.S.C. § 1225(a). In the light of these provisions, the question whether Clark was attempting entry or was in transit is not relevant.

*The Authority of the INS to Detain An Alien Caught in an Appeal.* Clark's main challenge is to his continued detention under § 1225(b). The detention he notes is "for further inquiry to be conducted by a special inquiry officer." § 1225(b). The term "special inquiry officer" is defined in 8 C.F.R. § 1.1(1) to mean "immigration judge." Consequently, in Clark's view, he

was lawfully detained while Immigration Judge Smith conducted her inquiry. Upon conclusion of the inquiry the authority granted by § 1225(b) ceased to exist. Clark was thereafter being held by the INS without statutory authority.

Clark acknowledges that it would be too sweeping a proposition to conclude that aliens who are found undeserving of asylum or withholding of deportation by an immigration judge should also be free. Accordingly, he takes the position that under 8 U.S.C. § 1227(a) the INS has authority to detain aliens who are found to be excludable. This statute provides:

Any alien (other than an alien crewman) arriving in the United States who is excluded under this chapter shall be immediately deported to the country whence he came ... unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practical or proper. The cost of the maintenance including detention expenses and expenses incident to detention of any such alien while he is being detained, as well as the transportation expense of his deportation from the United States, shall be borne by the owner or owners of the vessel or aircraft on which he arrived....

Clark argues that the reference to "detention" in this statute confers all the authority the INS has and that by its terms the statute only applies to an alien who has been found excludable.

Our analysis is as follows: Clark was detained before he entered the United States and placed in exclusion proceedings before the immigration authorities. In an exclusion proceeding, the burden of proof is on the alien to show that he is admissible to the United States. Until Clark receives a favorable final order from the Board of Immigration Appeals, he cannot be said to have met this burden. Until the Board renders its final order, Clark's status remains that of an alien seeking admission into the United States.

■■ An alien seeking admission into the United States has only such rights as

Congress has granted him. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950). An alien's freedom from detention is only a variation on the alien's claim of an interest in entering the country. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). As the alien has only such rights as Congress has granted, Clark can succeed in his petition only by showing that Congress has provided for his relief. In fact, Congress has provided for relief in a case of an excluded alien by the Attorney General "in his discretion" paroling such an alien into the United States temporarily "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A). We have no basis on this appeal to review the exercise of the discretion of the Attorney General in denying parole, although we observe that this discretion, while large, is not unlimited. *Moret v. Karn*, 746 F.2d 989 (3d Cir.1984).

Clark objects that his continued detention is inhumane. He has been held in "jail-like" conditions for over a year and may be conceivably held in this way for over another year while proceedings go on before the Board of Immigration Appeals and this court. Clark's argument, which is not without force, is addressed on this appeal to those who, by their role, cannot respond to it as long as the detention may still be described as "temporary." *See Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981). We are applying a clear statutory scheme where there is no authority vested in us to grant habeas corpus to one in Clark's present position.

AFFIRMED.