Lyndall RHODEN, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 93–55844.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1995.

Decided May 15, 1995.

Lyndall Rhoden, North Hollywood, CA, pro se.

Michael C. Johnson, Asst. U.S. Atty., Los Angeles, CA, for defendant-appellee.

Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.

PER CURIAM:

Lyndall Rhoden brought this action for false arrest and imprisonment against the United States under the Federal Tort Claims Act ("FTCA") after being detained by the Immigration and Naturalization Service ("INS") for six days without a hearing upon his return to California from a trip to Jamaica. The district court granted summary judgment for the government. Rhoden appeals.

I.

Lyndall Rhoden has been a lawful permanent resident of the United States since 1968. In October 1986, Rhoden returned to California from a one-week trip to Jamaica to attend his grandmother's funeral. After questioning by an INS officer, Rhoden signed a sworn statement that when he returned to the United States after a vacation in 1982 or 1983, customs agents found 2.6 kilograms of marijuana in his luggage. The statement also indicated that he had not been arrested, but had been required to pay a fine of $1200.

After giving his statement, Rhoden was allowed to go home, but was told to report back in six days. When he returned, he was taken into custody on the charge that he was excludable because he had been convicted of possession of marijuana.[1] He asked to be taken before an immigration judge and to be released on bail. These requests were denied. Six days later he was released and the charges against him dropped on the ground that his return to the United States had not been an "entry" for purposes of the Immigration and Nationality Act.[2]

II.

The FTCA specifies that the liability of the United States is to be determined "in accordance with the law of the place where the [allegedly tortious] act or omission occurred." 28 U.S.C. § 1346(b). Under California law, false imprisonment is the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 30 Cal.Rptr.2d 18, 26, 872 P.2d 559, 567 (1994) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 252 Cal.Rptr. 122, 139, 762 P.2d 46, 63 (1988)). A false imprisonment action may also be maintained if "the defendant unlawfully detains the [plaintiff] for an unreasonable period of time" after an otherwise legal seizure or arrest. *Lincoln v. Grazer*, 163 Cal.App.2d 758, 329 P.2d 928, 930 (1958). Once the plaintiff has proven the elements of the tort, the defendant has the burden to establish that the detention or arrest was legally justified. *See Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 205, 595 P.2d 975, 982 (1979).

The district court noted that California law does not provide standards as to when and for how long a federal immigration agent may detain a potentially excludable alien, what procedures the agent must follow, and when and how soon after being detained a person must be brought before an immigration judge. The court reasoned that without such state standards, it could not determine whether Rhoden's seizure and detention violated California law and therefore Rhoden

1. The INS apparently erroneously believed that Rhoden's $1200 fine had been the result of a criminal conviction.

2. Whether a returning alien is making an "entry" depends on factors such as the length and purpose of the trip. *See Jubilado v. United States,* 819 F.2d 210, 212–13 (9th Cir.1987). If a permanent resident alien's return constitutes an "entry," as opposed to a continuation of the alien's earlier residence, the alien loses certain protections to which the alien would otherwise be entitled.

could not maintain an action against the United States under the FTCA. Accordingly, the court granted summary judgment for the government.

 This was error. In an action under the FTCA, a court must apply the law the state courts would apply in the analogous tort action, including federal law. *See Caban v. United States,* 728 F.2d 68, 72 (2d Cir. 1984); *see also Richards v. United States,* 369 U.S. 1, 11–13, 82 S.Ct. 585, 591–93, 7 L.Ed.2d 492 (1962). Under California law, a California court would apply federal law to determine whether an arrest by a federal officer was legally justified and hence privileged. *See Trenouth v. United States,* 764 F.2d 1305, 1307 (9th Cir.1985) (applying federal law in an FTCA action for false imprisonment to determine legality of arrest by Department of Defense officers in California); *cf. Gasho v. United States,* 39 F.3d 1420, 1427–32 (9th Cir.1994) (applying federal law in FTCA false imprisonment action against federal customs officials to determine if probable cause justified arrest in Arizona). Thus, the liability of the United States in the present case will be determined by whether the INS agents complied with applicable federal standards when they detained Rhoden. *See Caban,* 728 F.2d at 72–73 (holding that federal law would determine whether the United States was liable for the INS's detention without a hearing of a U.S. citizen).

### III.

 The government argues that we should affirm summary judgment on the alternate ground that Rhoden's arrest and detention were legally privileged because the INS did not violate applicable federal standards.[3]

### A. *Rhoden's Arrest*

 Pursuant to 8 U.S.C. § 1225(b), an immigration officer at the border must detain all aliens "who may not appear to the exam-

ining immigration officer to be clearly and beyond doubt entitled to land." The statute extends to "every" alien, including a lawful permanent resident returning from a brief vacation. *See Clark v. Smith,* 967 F.2d 1329, 1331 (9th Cir.1992).

Rhoden was detained after signing a statement admitting he had previously attempted to import 2.6 kilograms of marijuana and had paid a $1200 fine. An alien is excludable under 8 U.S.C. § 1182(a)(2)(C) if an immigration officer "knows or has reason to believe [the alien] is or has been an illicit trafficker" of drugs such as marijuana. Because Rhoden admitted having attempted to bring a relatively large quantity of drugs across the border, it reasonably could have appeared to the INS agents that Rhoden was not "clearly and beyond doubt" entitled to enter.

 When INS officers determine an alien may not be admissible, the alien "may be detained, paroled, or paroled for deferred inspection" until an immigration judge conducts a hearing to determine if the alien should be allowed to enter. 8 C.F.R. § 235.3(c). Parole may be granted for "emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A). The parole statute vests "great discretion" in the Attorney General. *United States v. Lagarda–Aguilar,* 617 F.2d 527, 528 (9th Cir.1980). Rhoden offers no reason to believe the decision to detain him pending a hearing was an abuse of this wide discretion.[4] Because the agents had reason to believe Rhoden might be a drug trafficker, it was reasonable to conclude his release on parole would not be "strictly in the public interest."

### B. *Six-day Detention*

 The applicable statutes and regulations do not specify how long a permanent resident alien may be detained without a hearing. *See Barrera–Echavarria,* 44 F.3d at 1445–48 (statutory provisions relating to detention of excludable aliens or aliens sub-

---

3. We may affirm a summary judgment on any ground supported by the record, even if not relied upon by the district court. *Salmeron v. United States,* 724 F.2d 1357, 1364 (9th Cir. 1983).

4. "Congress intended that detention be the 'default' choice, and parole a discretionary exception." *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1446 (9th Cir.1995) (en banc).

ject to exclusion proceedings set no limit on length of detention); *see also Ramos v. Haig*, 716 F.2d 471, 474 (7th Cir.1983) ("INS's legal position that it may indefinitely detain aliens awaiting exclusion hearings is not foreclosed by the Act."). However, the government's six-day detention of Rhoden without a hearing must also be tested against constitutional limits.[5] As a permanent resident alien, Rhoden was entitled to constitutional protection.[6] *See Landon v. Plasencia*, 459 U.S. 21, 32–34, 103 S.Ct. 321, 329–30, 74 L.Ed.2d 21 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."). In particular, Rhoden was entitled to Fourth Amendment protection against unlawful seizures. *See Benitez–Mendez v. INS*, 760 F.2d 907, 909–10 (9th Cir.1983) (finding that INS seizure of alien violated Fourth Amendment); *see also INS v. Delgado*, 466 U.S. 210, 213 n. 1, 215–21, 104 S.Ct. 1758, 1761 n. 1, 1762–65, 80 L.Ed.2d 247 (1984) (considering whether questioning of resident aliens by INS agents amounted to seizure for purposes of Fourth Amendment); *Martinez v. Nygaard*, 831 F.2d 822, 824, 826–28 (9th Cir.1987) (analyz-

ing whether seizures of three resident aliens complied with Fourth Amendment).

To pass muster under the Fourth Amendment, Rhoden's six-day detention must have been "reasonable." *See United States v. Montoya de Hernandez*, 473 U.S. 531, 542–44, 105 S.Ct. 3304, 3311–12, 87 L.Ed.2d 381 (1985) (analyzing constitutionality of length of traveler's border detention under Fourth Amendment reasonableness standard); *Caban*, 728 F.2d at 75 (considering whether duration of border detention without a hearing was reasonable).[7] The record reflects disputed issues of material fact bearing upon the reasonableness of the duration of Rhoden's detention.[8] Whether the length of Rhoden's detention was reasonable and therefore legally privileged requires resolution of these issues on remand.

### IV.

Rhoden seeks leave to amend his complaint to add a *Bivens* action. Leave to amend is generally within the discretion of the district court. Rhoden may seek such leave on remand.[9]

---

5. A plaintiff cannot bring an FTCA claim against the United States based *solely* on conduct that violates the Constitution because such conduct may violate only federal, and not state, law. *See FDIC v. Meyer*, —— U.S. ——, ——, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). In this case, however, if Rhoden's detention without a hearing was unconstitutional, then it was not legally justified or privileged. As a result, under California law, Rhoden could establish the state tort of false imprisonment. Accordingly, he may pursue an FTCA action. *See Carlson v. Green*, 446 U.S. 14, 19–20, 23, 100 S.Ct. 1468, 1471–72, 1474, 64 L.Ed.2d 15 (1980) (noting that the same conduct might give rise to both FTCA and *Bivens* actions).

6. Rhoden's permanent resident status distinguishes *Kumar v. Ilchert*, 783 F.Supp. 1258 (N.D.Cal.1992), upon which the government principally relies. The alien in *Kumar* was seeking initial admission to the United States and therefore "ha[d] no constitutional rights regarding his application." *Landon*, 459 U.S. at 32, 103 S.Ct. at 329.

7. In the context of a criminal arrest, a detention of longer than 48 hours without a probable cause determination violates the Fourth Amendment as a matter of law in the absence of a demonstrated emergency or other extraordinary circumstance. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56–58, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49

(1991). However, the Supreme Court arrived at this rule by considering the time it takes to complete administrative steps typically incident to arrest. *See id.* Clearly, border detentions involve a distinct set of considerations and require different administrative procedures. Accordingly, *McLaughlin* does not compel the conclusion that Rhoden's 6–day detention violated the Fourth Amendment as a matter of law.

8. For example, Rhoden alleges that the INS did not file a charging document with the court during his detention as required by 8 C.F.R. § 3.14. Apparently, the court would not be aware of the need to schedule a hearing until such a charging document was filed. Failure to notify the court of Rhoden's detention would be relevant to the reasonableness of the length of detention, especially if the government's normal practice was to file such forms immediately. Further, the government emphasizes that Rhoden's detention included a weekend, but Rhoden claims immigration judges were available for hearings on weekends. *See Caban*, 728 F.2d at 75 (citing the lack of evidence that a judge was available on the weekend as a factor making length of detention reasonable).

9. We note, however, that "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies

AFFIRMED IN PART, REVERSED IN PART.

of the complaint could not be cured by amendment.'" *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir.1980)).