William F. **RESH**, M.D.; Skin & Skin Cancer Medical Group of San Diego, Inc., a California Corporation, Plaintiffs–Appellants,

v.

**CONNECTICUT NATIONAL BANK,**
a Delaware Corporation,
Defendant–Appellee.

No. 94–56678.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided July 11, 1996.

Sean T. O'Bryan, San Diego, California, for plaintiff-appellant.

Michael A. Firestein, McCambridge, Deixler, Marmaro & Goldberg, Los Angeles, California, for defendant-appellee.

Before: FLOYD R. GIBSON,* JOHN T. NOONAN, Jr., and DAVID R. THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

William F. Resh, M.D., Skin and Skin Cancer Medical Group of San Diego, Inc., a California corporation, (the Payee) appeals the grant of summary judgment in favor of Connecticut National Bank Corporation, N.A., a Delaware corporation (the Drawee). Jurisdiction in the district court was based on diversity of citizenship. The case involves the liability of two banks for the handling of checks carrying the forged endorsement of Resh (the Payee). The checks were all deposited to the forger's account in the San Diego Trust and Savings Bank (the Depositary) and forwarded by that bank to the Drawee, which honored them and paid the Depositary. As the Payee brought suit against the Depositary, the Payee ratified the payments made by the Drawee. On this basis we affirm the judgment of the district court.

* The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

## FACTS

The following facts were either stipulated or undisputed: The Payee was engaged in a medical practice in San Diego in which a substantial number of payments were made by Medicare. From 1981 to 1990 the bookkeeper was Rosemary Montooth. She received the checks mailed by Medicare, posted them to the accounting ledgers which included patients' records and lists of daily and monthly receivables. She normally affixed the Payee's endorsement on each check by using a stamp provided by the Payee for this purpose. She would then deliver checks to Dr. Resh for him to deposit.

A considerable difference regularly existed between what was billed to Medicare and what Medicare paid the physician. Montooth explained the difference between the receivables, representing what had been billed to Medicare, and the amount actually collected, as write-offs of the amounts Medicare would not cover. This gap gave the dishonest bookkeeper an opportunity. From time to time, Montooth would remove checks from the mail and not enter them into the ledgers as collected. She would endorse the checks manually either with the endorsement: "W.F. Resh, M.D." followed underneath by "Rosemary Montooth" or simply "W.F. Resh, M.D." She would deposit these checks into an account at the Depositary in the name of James E. Montooth and Rosemary M. Montooth. The checks were typically for amounts that never exceeded $1,600 and usually did not exceed $1,000. Between July 1981 and February 1988 Montooth cashed more than 200 Medicare checks, totaling over $210,000 in this fashion. Between February 20, 1988 and February 20, 1990 she cashed almost 200 more such Medicare checks totaling $118,974.

Following the deposit of the checks with the forged endorsements in the Depositary, the Depositary forwarded them to the Drawee for collection. By contract with Transamerica Occidental Life Insurance Company,

which administered the Medicare system in southern California, the Drawee had an account for "payment of items and services covered under [Medicare]." From this account the Drawee reimbursed the Depositary for the forged checks forwarded for collection. At no time while Montooth's scheme was in effect was either the Depositary or the Drawee aware of any irregularity in the checks.

Near the end of February 1990 Dr. Resh noticed several Medicare checks on Montooth's desk, of which he had not been informed. His investigation of these checks led him to examine further Montooth's practices and ultimately to the disclosure of her nine-year scheme of crime and her eventual conviction.

### PROCEEDINGS

On February 20, 1991 the Payee sued the Depositary, the Drawee, Montooth, and Transamerica in California superior court. The Drawee tendered its defense to the Depositary and requested indemnity on the basis of the warranties made by the Depositary of the endorsements. The Payee then dismissed the Drawee without prejudice, with the agreement by the Drawee that any statute of limitations was tolled as of the date the suit had been filed. The Payee voluntarily dismissed Transamerica and obtained judgment against Montooth. The Payee reached a settlement with the Depositary in the amount of $140,000. On July 15, 1992 the superior court found that the settlement was in good faith, barring any further cross-complaints against the Depositary for equitable indemnity or contribution. The Drawee had notice of the proposed settlement but declined to participate in it.

On November 12, 1992 the Payee brought the present action in the federal district court against the Drawee. Four causes of action were asserted: that the Drawee had been negligent in failing to discover the forged endorsements; that the Drawee had paid the checks by mistake; that the Drawee had converted the checks to its own use; and that the Drawee had wrongfully detained the proceeds of the checks which were therefore subject to a constructive trust. The Drawee moved for summary judgment, relying on ratification by the Payee and also relying on the statute of limitations and the Payee's negligence in discovering the fraud. The Payee presented evidence in the form of an expert opinion that it had not been guilty of negligence in supervising Montooth and the opinion of an expert that the Drawee had been guilty of negligence in not checking the endorsements. It was stipulated that each day the Drawee processed approximately $1,300,000 drawn upon it and that the Drawee did not examine endorsements on checks where its only role was that of being the drawee bank.

At a hearing on the summary judgment motion the district court stated in open court: the applicable statute of limitations was three years, so that unless the statute was tolled for the claims prior to February 1988, the statute operated as a bar. If the Payee could not have reasonably discovered the fraud before February 1990, the statute was tolled. The district court declared that no rational jury could find that the Payee had observed reasonable care: it had failed to keep any supervision over the accounts in any part of the nine-year period and failed to have any audit of the accounts in this period. The district court was also of the view that the claims for the period after 1990 had been fully satisfied by the Payee's settlement with the Depositary. Accordingly, the district court granted summary judgment. The actual order did not specify the grounds for the judgment.

The Payee appeals.

### ANALYSIS

We are free to affirm on any ground apparent in the record. See *Rhoden v. United States*, 55 F.3d 428, 431 n. 3 (9th Cir.1995). It is established California law that suit by the payee of a check against the depositary or collecting bank ratifies the payment made by the drawee or payor bank to the depositary bank. *Cooper v. Union Bank*, 9 Cal.3d 371, 384, 107 Cal.Rptr. 1, 507 P.2d 609 (1973). This decision of the California Supreme Court is binding upon us in this diversity action; but we need to consider the distinctions and objections raised by the Payee.

The Payee objects that its causes of action for negligence and payment by mistake are not barred by *Cooper*—only its cause of action for conversion. It is true that *Cooper* dealt only with the effect of ratification on conversion, but we can perceive no difference created by the other theories. If, as *Cooper* holds, the action for conversion ratified payment by the Drawee, the Drawee did not pay by mistake and the Drawee was not negligent in its payment.

The Payee further contends that the ratification should not extend beyond the settlement and that at the most the Drawee should be entitled to a setoff of the $140,000 recovered from the Depositary. The Payee notes that the state suit treated both the Depositary and the Drawee as defendants; that at that point the Payee had not chosen between them; and that under California practice, it is normally appropriate to pursue alternative theories of liability. But *Cooper* speaks differently. When the depository and the drawee were sued in that single suit, ratification was held to have taken place by the filing of the suit. *Cooper,* 9 Cal.3d at 384, 107 Cal.Rptr. 1, 507 P.2d 609. So here, the Payee made its choice when it sued the Depositary and thereby ratified the Drawee's payments.

Accordingly, the judgment of the district court is **AFFIRMED.**