**Jose Luis ARAUJO Maria Araujo, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C 03–03–2 MHP.**

United States District Court, N.D. California.

Jan. 23, 2004.

Marc Van Der Hout, Van Der Hout & Brigagliano, San Francisco, CA, for plaintiffs.

Suzanne G. Ramos, U.S. Attorney's Office, San Francisco, CA, Mark St. Angelo, United States Attorney's Office, San Jose, CA, for defendant.

### *MEMORANDUM & ORDER* Re: Plaintiffs' and Defendant's Cross–Motion for Summary Judgment

PATEL, Chief Judge.

This matter comes before the court on cross-motions for partial summary judgment regarding the impact of the Ninth Circuit's decision in *Castro–Cortez v. INS* on this litigation. Plaintiffs claim that they are entitled to summary judgment on the issue of liability, since the Ninth Circuit has already decided that question in their favor. Defendant, meanwhile, argues that a different question was at issue in *Castro–Cortez,* and thus that the Ninth Circuit's holding is functionally inapplicable to this case. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

*BACKGROUND*

The facts that give rise to this case are already well-described in the Ninth Circuit's decision in *Castro–Cortez v. INS,* 239 F.3d 1037 (9th Cir.2001). For the sake of

clarity and completeness, the court summarizes them again here.

Plaintiff Jose Luis Araujo, a citizen of Mexico, initially came to the United States in 1979. *Id.* at 1041. In 1983, Araujo was caught and deported by the INS after that agency determined that he had entered the United States illegally. *Id.* at 1042. Shortly after his deportation Araujo again returned to the United States illegally, and in 1996 he married Maria Araujo, a United States citizen. *Id.* In 1997, the INS became aware that Mr. Araujo was again unlawfully in the country when he filed of an "Application to Adjust Status" to lawful permanent resident. Joint Statement of Undisputed Facts, at 2. On the morning of March 2, 1999, INS officers arrested plaintiff at his home and informed him that he would be taken "straight to Mexico" per a reinstated order of deportation. *Castro–Cortez,* 239 F.3d at 1041–42. Araujo was flown to Phoenix, Arizona, and then placed on a bus and driven to Nogales, Mexico, where he was deposited on March 3rd. *Id.* at 1042. The INS took this action under the legal auspices Section 241(a)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), the relevant portion of which is codified at 8 U.S.C. § 1231(a)(5), which permits the INS to reinstate prior orders of removal against aliens who have unlawfully reentered the United States. *Id.* at 1040.

Jose Luis Araujo subsequently filed a habeas petition with the Ninth Circuit, arguing both that his summary expulsion from the United States violated his right to procedural due process and that section 1231(a)(5) did not apply to him because he had reentered the United States in violation of a prior deportation order many years before the passage of IIRIRA. In *Castro–Cortez* (a consolidated case involving several similar habeas petitions by individuals deported pursuant to this provision), the Ninth Circuit granted Araujo's

habeas petition and ordered him returned to the United States, holding that "Congress clearly intended that the statute [§ 1231(a)(5)] should not be applied retroactively to aliens whose reentry occurred prior to its enactment." *Id.* at 1051. In an unpublished decision, the Circuit subsequently awarded attorney's fees to plaintiffs' counsel under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

After the resolution of plaintiff's habeas case, Jose Luis Araujo and his wife Maria Araujo filed suit against the United States, seeking civil damages under the Federal Tort Claims Act (FTCA) for injuries sustained in the course of Mr. Araujo's unlawful detention and deportation. *Castro–Cortez v. INS,* CV–98–01371–TSZ, at 3. Plaintiffs allege that by taking Mr. Araujo into custody and deporting him pursuant to an inapplicable statute, the INS committed the tort of false arrest and false imprisonment (which in California are amalgamated as one offense). This case now comes before the court on cross-motions for summary judgment which ask this court to determine what effect, if any, the Ninth Circuit *Castro–Cortez* holding has upon the pendent legal and factual issues in plaintiff's suit for damages.

*LEGAL STANDARD*

I. *Summary Judgment*

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party for summary judg-

ment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir.1994). The court may not make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

### II.  Collateral Estoppel

According to the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County,* 59 F.3d 852, 863 (9th Cir.1995). Collateral estoppel applies only where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec*

*Corp.,* 204 F.3d 880, 885 (9th Cir.2000) (citations omitted).

### DISCUSSION

### I.  The FTCA

Plaintiffs have moved for summary judgment on the question of whether defendant is liable for false arrest and false imprisonment under the FTCA. The FTCA provides that the United States may be held liable for torts committed "in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b). Since Araujo was originally arrested and taken into INS custody in California, the court must look to the laws of California to determine whether he was falsely imprisoned and falsely arrested; in California, those two offenses coalesce. *See Watts v. County of Sacramento,* 256 F.3d 886, 891 (9th Cir. 2001) ("Under California law, the tort of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'") (quoting *Asgari v. City of Los Angeles,* 15 Cal.4th 744, 763, 63 Cal. Rptr.2d 842, 937 P.2d 273 (1997)). According to California law, false imprisonment consists of "nonconsensual, intentional confinement of a person, *without lawful privilege,* for an appreciable length of time, however short." *Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 703, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) (emphasis added).

### II.  Applicability of Collateral Estoppel to "Lawful Privilege"

#### A.  Issues Decided in Castro–Cortez

■ In the course of its argument regarding the inapplicability of *Castro–Cortez* to the present action, defendant raises and then dismisses three potential grounds upon which plaintiff might seek to apply *Castro–Cortez,* including the "law of the case" doctrine, *res judicata* (or "claim preclusion"), and collateral estoppel (or "issue

preclusion"). In fact, plaintiff has argued for the application of *Castro–Cortez* only via the doctrine of collateral estoppel, and thus that is the lone basis for summary judgment that the court will address here. Defendant does not appear to contest plaintiff's contention that the second and third *Hydranautics* factors are satisfied.[1] *See* Def. Mot., at 7–10. Rather, the United States argues that the issues of liability raised here are not identical to those decided by the Ninth Circuit in *Castro–Cortez*. In particular, defendant argues that in the present action it will assert as a defense that Araujo's arresting INS agents acted with "lawful privilege," an issue that was not litigated or considered in *Castro–Cortez*.[2] *See id.* at 9. Defendant points this court to a four-part test adopted by the Ninth Circuit for determining whether two issues considered in two separate litigations are identical for the purposes of collateral estoppel:

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1116 (9th Cir.1999). Defendant then argues that the question of "lawful privilege" fulfills none of these four factors, particularly because the true issue in question in *Castro–Cortez* had nothing to do with whether the INS agents operated under a "lawful privilege" but instead concerned "whether the INS as an agency correctly concluded that amended 8 U.S.C. § 1231(a)(5) applied to aliens such as Araujo who had been deported and who had illegally reentered the United States before the effective date of the IIRIRA." Def. Mot., at 9.[3]

Contrary to defendant's position, under well-established Ninth Circuit law, the questions of whether the INS lawfully detained and deported Araujo under 8 U.S.C. § 1231(a)(5) (at issue in *Castro–Cortez* ) and whether the INS agents who did so acted with a "lawful privilege" (at issue here) are one and the same. The Ninth Circuit previously considered this issue in a very similar context, viz., an FTCA false imprisonment action stemming from an INS detention of a lawful permanent resi-

---

1. They could hardly do so in good faith, since *Castro–Cortez* was quite self-evidently a final judgment on the merits to which the United States was a party to that action as the defendant and Jose Luis Araujo a party as a plaintiff.

2. Defendant does not appear to suggest or posit any other applicable defenses, and this court is not aware of any others that might legitimately be employed here. However, it is worth noting that this memorandum and order decides only the questions currently before the court; the court does not purport to be ruling upon the entire panoply of potential other issues that may exist in this action.

3. As discussed in greater detail below, the precise issue of "lawful privilege" at issue here presents a question of federal law. Lest there be any doubt as to the applicability of *Castro–Cortez* to this case, however, it is worth noting that other courts have held without contradiction that collateral estoppel applies to an action brought under the FTCA, even when the prior adjudication involved federal law. *See, e.g., Johnson v. United States,* 576 F.2d 606, 612 (5th Cir.1978), *cert denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

dent. In *Rhoden v. United States,* the district court initially granted summary judgment for the United States government under the rationale that "California law does not provide standards as to when and for how long a federal immigration agent may detain a potentially excludable alien... The [district] court reasoned that without such state standards, it could not determine whether Rhoden's seizure and detention violated California law and therefore Rhoden could not maintain an action against the United States under the FTCA." *Rhoden v. United States,* 55 F.3d 428, 430–31 (9th Cir.1995). The Ninth Circuit reversed, explaining that "[u]nder California law, a California court would apply federal law to determine whether an arrest by a federal officer was *legally justified and hence privileged* .... Thus, the liability of the United States in the present case will be determined by whether the INS agents complied with applicable federal standards when they detained Rhoden." *Id.* at 431 (citations omitted) (emphasis added); *see also Alvarez–Machain v. United States,* 331 F.3d 604, 640 (9th Cir. 2003) (*en banc*) (citing *Rhoden* and holding in a similar FTCA context that "the United States' liability hinges on whether federal employees complied with applicable federal standards") (internal quotation omitted).[4]

This issue of compliance with applicable federal standards is *precisely* what *Castro–Cortez* adjudicated in the course of granting plaintiff's habeas petition. As a necessary logical predicate to granting the petition, the Ninth Circuit held that the INS possessed no legal authority to seize Araujo since section 1231(a)(5) did not apply retroactively to his conduct. *Castro–Cortez,* 239 F.3d at 1051. Moreover, the validity of 1231(a)(5) and its applicability to Araujo and his co-plaintiffs was the principal substantive issue of that case; the government's substantive position in *Castro–Cortez* rested—in essentially its entirety—upon the legal legitimacy and authority bestowed upon INS agents by that law. *See id.* at 1047–1053.

With these facts in mind, consideration of the *Resolution Trust* factors is reduced to a mere formality: (1) there exists not only substantial overlap but utter equivalence between the evidence and arguments that would be advanced in opposition to defendant's habeas petition and in support of a "lawful privilege" defense; (2) the rule of law at issue in each proceeding is the same; (3) pretrial preparation and discovery in the first action would unquestionably encompass the matter presented in the second, since the first action focused on precisely that question; and (4) the claims involved in the two proceedings are very closely related, since they are both civil allegations that defendant's arrest and deportation were unlawfully undertaken pursuant to section 1231(a)(5). In short, collateral estoppel applies in this case to the issue of defendant's liability under the FTCA; the *Castro–Cortez* court has already decided all of the relevant questions.

---

**4.** The only source of "lawful privilege" other than underlying federal authority that defendants might potentially invoke is California's "citizen arrest" provision, which authorizes arrests in some contexts that federal law might not. However, the Ninth Circuit has already rejected the California law of citizen arrest as inapplicable to both Drug Enforcement Administration and Internal Revenue Service agents, holding that the "law enforcement obligations and privileges" of these agents " 'make the law of citizen arrests an inappropriate instrument for determining FTCA liability.' " *Alvarez–Machain,* 331 F.3d at 640–41 (DEA agents) (quoting *Arnsberg v. United States,* 757 F.2d 971, 979 (9th Cir. 1985) (IRS agents)); *see also Ting v. United States,* 927 F.2d 1504, 1514 (9th Cir.1991) (IRS agents). The same considerations are equally applicable here, and thus it appears beyond doubt that the INS may not call upon California's citizen arrest law as a shield for activity that federal law will not sanction.

### B. *Alternative Grounds for Asserting Lawful Privilege*

██ Faced with this legal nexus between the issue decided in *Castro–Cortez* and the tort element of lawful privilege, defendant argues that the INS possessed alternative legal grounds other than 8 U.S.C. section 1231(a)(5) on which to arrest plaintiff. The government claims that these alternative legal bases would constitute a "legal justification" and hence a "lawful privilege" for the INS officers to have acted as they did, even if section 1231(a)(5) did not provide sufficient authority. Specifically, the government points to 8 U.S.C. sections 1326 and 1357(a)(2), which it believes permit the INS to arrest individuals such as Araujo who are illegally within the United States. Plaintiffs reply that these other putative grounds are irrelevant to the question at hand. Since the INS obviously intended to arrest Araujo under the auspices of 8 U.S.C. section 1231(a)(5), and in fact carried out the arrest as if it were buttressed by that legal authority, alternative post hoc legal theories cannot be used to justify that arrest. *See* Van Der Hout Dec., Exh. 1 (INS Notice of Intent/Decision to Reinstate Prior Order stating the government's intent to arrest and deport Araujo pursuant to section 241(a)(5) of the Immigration and Nationality Act (8 U.S.C. section 1231(a)(5))).

The United States' reliance upon these alternative avenues of legal authority is unfounded. Neither 8 U.S.C. section 1326 nor 8 U.S.C. section 1357(a)(2) provide sustainable grounds upon which the original INS arrest of Araujo could be supported. 8 U.S.C. section 1326 provides that it is a felony for any alien who "has been denied admission, excluded, deported, or re-

moved" to be "found" within the United States. 8 U.S.C. § 1326(a)(1). Presumably, the INS could have obtained a warrant for Araujo's arrest and arrested him for violation of that statutory provision. However, the INS did not obtain a warrant to arrest Jose Araujo.[5] By consequence, his arrest, if effected for a violation of 8 U.S.C. section 1326, is governed by 8 U.S.C. sections 1357(a)(2) and (4), the statutory sections empowering INS officers to make arrests of certain illegal aliens without warrants. *See, e.g., United States v. Tejada,* 255 F.3d 1, 3 n. 3 (1st Cir.2001) ("Courts have read subsection (a)(2) to apply to arrests of aliens for status offenses and subsection (a)(4) to apply to arrests of aliens for other crimes."). Specifically, section 1357(a) authorizes the INS

... (2) to arrest any alien who is... entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe the alien so arrested is in the United States in violation of any such law or regulation *and is likely to escape before a warrant can be obtained for his arrest* ... [and]

...(4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and *if there is likelihood of the person escaping before a warrant can be obtained for his arrest* ....

8 U.S.C. § 1357(a)(2) & (4).

The government has not attempted to demonstrate, and cannot demonstrate, that

**5.** The government stated at oral argument that the INS did not obtain a warrant for the arrest of Jose Araujo, and no such warrant is evident in the record.

Jose Araujo was "likely to escape before a warrant can be obtained." The only evidence in the record is to the contrary: at the time of his arrest Jose Araujo was living with his wife and had filed an Application to Adjust Status to lawful permanent resident, hardly evincing an intention to flee. Moreover, Jose Araujo filed this Application in 1997 but was only arrested in 1999; in the interim, the INS had time to file a Notice of Intent/Decision to Reinstate Prior Order. *See* Van Der Hout Dec., Exh. 1. Defendant has not produced any evidence to support its claim that Araujo could have been subject to a warrantless arrest under section 1357(a)(2) or (4). Under such circumstances, summary judgment for plaintiff is proper. No alternative grounds exist upon which plaintiff's arrest can be maintained. Because the government is incorrect in its belief that alternative legal authority existed for its arrest of Jose Araujo, it is not necessary for this court to decide plaintiffs' rebuttal argument regarding whether post hoc explanations can justify an arrest made on false grounds.

*CONCLUSION*

For the reasons stated above, the court GRANTS plaintiff's motion for partial summary judgment on the issue of liability and DENIES defendant's motion in its entirety.

IT IS SO ORDERED.