[No. 12872-5-III.    Division Three.    June 30, 1994.]

NANCY SHAW, *Appellant,* v. THE HOUSING AUTHORITY OF THE CITY OF WALLA WALLA, *Respondent.*

*David H. Putney* and *Putney Mazzola,* for appellant.

*Tom Scribner* and *Minnick-Hayner, P.S.,* for respondent.

SWEENEY, A.C.J. — Nancy Shaw was terminated as executive director of the Housing Authority of the City of Walla Walla (Housing Authority) by the Board of Commissioners of the Housing Authority (Board). She filed suit against the Housing Authority for wrongful discharge and damages. The trial court granted summary judgment for the Housing Authority, dismissing Ms. Shaw's complaint. She contends the court erred in concluding as a matter of law (1) the personnel policies did not apply to her, and (2) she was not terminated for raising conflict of interest issues. We reverse.

## I

### FACTS

Ms. Shaw was hired as executive director of the Housing Authority in 1981. She had no written contract of employment during the 10 years she held that position. As execu-

tive director, she supervised construction of low income rental units and arranged subsidized housing for qualified applicants. She was also responsible for hiring, firing, discipline and management at the Housing Authority. In 1989, the Board adopted a personnel policy for Housing Authority employees drafted by Ms. Shaw. The policy included provisions for performance reviews, probation, and disciplinary termination for "just cause".[1]

Ms. Shaw's performance was evaluated by the Board in December 1988. The written evaluation stated Ms. Shaw performed her duties "in a satisfactory manner", described her as "cooperative" with the staff, efficient, knowledgeable of state and federal regulations and timely at meeting deadlines. The evaluation also noted deficiencies. She was advised to be more objective dealing with criticism. She was faulted for abrasiveness, unreliability following Board directives and poor writing skills. The evaluation also recommended closer monitoring of her outgoing communications and agenda preparation.

The Board evaluated Ms. Shaw's performance again in March 1991. Citing a continuing problem with handling criticism, abrasiveness, poor public relations, lack of reliability, poor written work, poor budget presentation, and inefficiency, the Board placed her on probation for 3 months.

Sometime in the summer of 1991, the Board hired Leo Dauwer, a consultant, to evaluate Ms. Shaw's performance.[2] His conclusions were the subject of some dispute. Ms. Shaw contends his report stressed her competency and criticized the Board for overinvolvement with her administrative duties. The Board contends he concluded Ms. Shaw was "in over her head". Mr. Dauwer apparently recommended the

---

[1]The policy authorizes disciplinary termination for three causes:

"(1) failure to abide by written Authority policy,

"(2) activity in opposition to the stated aims or goals of the Authority,

"(3) inappropriate behavior . . . [including use of alcohol or drugs, sexual harassment, fighting, falsifying records, improper use of funds, insubordination and misrepresentation]."

[2]Mr. Dauwer's evaluation is not contained in the record.

Board extend Ms. Shaw's probationary period for another 3 months.

Although the record is unclear, it appears that during Ms. Shaw's probationary period she raised conflict of interest questions concerning almost every member of the Board. Two members of the Board who had lived in Walla Walla when appointed to the Board later moved outside the city limits. Ms. Shaw contacted the State Attorney General and the city attorney, inquired whether these members could remain on the Board and was told they could. She contacted the Attorney General concerning possible self-dealing by another Board member because he had offered to rent his condominium to the Housing Authority for retreats. She also contacted the Attorney General and the city attorney alleging two Board members benefited from Housing Authority rental agreements.

On August 8, 1991, the Board terminated Ms. Shaw. Besides the criticisms listed in earlier evaluations, the Board cited Ms. Shaw's unwillingness to accept directions from the Board, her misrepresentations to the Board, unauthorized absences, insubordination and incompetence. On August 28, Ms. Shaw requested a hearing "under either the by-laws or personnel policies". The Board responded that the personnel policies did not apply to her because she was the executive director. It also directed her to the personnel policy rules on sick leave and annual leave in response to her request for unused sick leave.

On December 23, 1991, Ms. Shaw filed a complaint for damages for wrongful termination. The Housing Authority moved for summary judgment on September 2, 1992, arguing that Ms. Shaw was an employee at will and therefore the personnel policies requiring termination only for "just cause" did not apply to her, but that in any event it had good cause to terminate. The court granted summary judgment and dismissed the complaint, concluding that the personnel policies did not apply to Ms. Shaw's termination and she was not terminated for raising conflict of interest issues.

## II

DISCUSSION

### A

Standard of Review

The standard of review for a summary judgment is well settled and need not be repeated here. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 518-19, 826 P.2d 664 (1992).

### B

Applicability of the Personnel Policy

Ms. Shaw first contends that the court erred in concluding that the Housing Authority's personnel policies did not apply to her because she was the executive director. She points out that the stated purpose of the policy is to provide a personnel management system "that deals with *all* employees in an equitable and uniform manner" (italics ours); the policy does not specifically exclude the executive director and, in fact, refers to the executive director as a member of a class of employees not entitled to overtime pay. She also notes that the attorney for the Housing Authority directed her to provisions of the policy regarding her right to appeal the termination and to receive payment for unused sick leave.

The Housing Authority counters that the policy makes no provision for the discipline or termination of the executive director and therefore should not apply to her. It notes that all probation, discipline, and disciplinary termination provisions require the approval or authority of the executive director. How, it asks, can she be the subject of her own disciplinary measures? It also points out that the personnel policies were drafted by Ms. Shaw and suggests, without stating, that they should therefore be construed most strongly against her.

The interpretation of a writing is a question of law. *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988). However, "whether the parties intended policies in an employment document to be part of their employment contract involves an issue of fact." *Swanson*, at 523.

While it is true that many of the provisions of the policy require administrative review and action by the executive director, that fact alone does not rule out that other provisions were intended to apply to Ms. Shaw, the most significant of which is the requirement of just cause for termination. The policies define termination as "[t]he involuntary cessation of employment with the Authority for just cause". Whether the Housing Authority and Ms. Shaw intended that these personnel policies be a part of her employment contract is an issue of fact on which reasonable minds might differ and the issue therefore should have been submitted to the jury. *See Swanson*, at 523.

■ The Housing Authority's argument that the policies should be construed against Ms. Shaw because she was the author of the document is likewise unpersuasive. These policies were considered and ultimately adopted by the Board and are therefore the personnel policies of the Housing Authority, not Ms. Shaw. She was merely the scrivener.

## C

### Promise of Specific Treatment

Ms. Shaw next contends, independent of her contract claim, that these personnel policies promised specific treatment in specific circumstances on which she relied. *Swanson*, at 525. The Housing Authority counters that the promise of specific treatment for specific circumstances is not an independent cause of action but rather the second step in the analysis set out in *Swanson*. It argues that in addition to a contractual obligation, Ms. Shaw must also present evidence of reliance: *i.e.*, she stayed on the job. Ms. Shaw is correct; the Housing Authority confuses two separate causes of action. The first, as we have discussed, is whether her employment-at-will relationship with the Housing Authority was modified by the personnel policies. If the jury concludes that it was, then the Housing Authority must comply with the employment contract as modified.

■ The second cause of action — promise of specific treatment in specific situations — is in the nature of the equit-

able doctrine of promissory estoppel. Promissory estoppel requires five elements: (1) a promise (2) which the promisor should reasonably expect will cause the promisee to change position and (3) which actually causes the promisee to change position (4) in justifiable reliance on the promise, so that (5) injustice can be avoided only by enforcement of the promise. *Seattle-First Nat'l Bank v. Siebol*, 64 Wn. App. 401, 408, 824 P.2d 1252 (citing *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967)), *review denied*, 119 Wn.2d 1010 (1992). When an employer makes promises of specific treatment in specific situations and the employee is induced by those promises to remain on the job and not seek other employment, the promises likewise become "enforceable components of the employment relationship". *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984). Ms. Shaw must therefore not only be aware of a promise of specific treatment in specific situations, she must have relied on that promise before it is enforceable. Ms. Shaw was certainly aware of the policy; as we have noted, she drafted it. She presents no evidence, however, of reliance and the cause of action therefore fails. *Stewart*, at 613.

## D

### Public Policy Ground

■ ■ Ms. Shaw next contends she was discharged in violation of public policy for raising conflict of interest questions about members of the Board. *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989). An employer may be liable in tort for wrongful discharge if the termination contravenes a clear mandate of public policy. The initial burden is on the employee to present a prima facie case his or her dismissal violates a clear mandate of public policy. *Thompson*, at 232. "The question of what constitutes a clear mandate of public policy is one of law." *Dicomes*, at 617.

■ One recognized contravention of a clear mandate of public policy is a discharge premised on employee "whistleblowing" activities. *Dicomes*, at 618. Employees are encouraged to report improper governmental activities, defined as

action taken by a public official that (1) violates state law, (2) is an abuse of authority, (3) is a substantial and specific danger to the public health or safety, or (4) is a gross waste of public funds. RCW 42.40.020(3).

*Dicomes,* at 619.

Ms. Shaw established a prima facie case of wrongful discharge in violation of public policy: she presented evidence Board members may have violated RCW 35.82.050[3] and she was terminated shortly thereafter. *Thompson,* at 232-33. The reasonableness of the manner in which she reported the alleged misconduct and the degree of the Board members' alleged wrongdoing are questions for the trier of fact. *Dicomes,* at 619.

We reverse the summary judgment and remand for trial.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 125 Wn.2d 1024 (1995).

---

[3]RCW 35.82.050 provides that no commissioner or employee of a housing authority may acquire a direct or indirect interest in any property involved in a housing project or in any contract for materials or services in connection with a housing project. Violations may lead to removal of the commissioner. RCW 35.82.060.