Shirley D. KEENAN; Daniel E. Keenan, Plaintiffs–Appellants,

v.

Wallace E. ALLAN; Janis M. Whitener–Moberg; County of Grant, by and through the Grant County District Court of the Grant County Board of Commissioners; Helen Fancher, Leroy Allison, and Tim Snead, personally and in their representative capacities as members of the Grant County Board of County Commissioners, Defendants–Appellees,

Washington Commission on Judicial Conduct, Appellee.

No. 95–35577.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1996.

Decided Aug. 1, 1996.

** The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

Robert A. Dunn, McCormick, Dunn & Black, Spokane, Washington, for plaintiffs-appellants.

John Francis Kennedy and Ellen R. Donovan, Law Offices of John Francis Kennedy, Tacoma, Washington, for defendant-appellee Allan.

Daniel W. Ferm and Sheryl J. Willert, Williams, Kastner & Gibbs, Seattle, Washington, for defendant-appellee Whitener–Moberg.

Daniel E. Huntington, Richter–Wimberley, Spokane, Washington, for defendants-appellees Grant County, Fancher, Allison and Snead.

Peter D. Byrnes and Paul R. Taylor, Byrnes and Keller, Seattle, Washington, for defendant-appellee Washington Commission on Judicial Conduct.

* Honorable Fern M. Smith, United States District Judge for the Northern District of California,

Before: BROWNING and T.G. NELSON, Circuit Judges, and SMITH,* District Judge.

T.G. NELSON, Circuit Judge:

Shirley and Daniel Keenan ("the Keenans"), a married couple, appeal the district court's summary judgment in favor of former Grant County District Court Judge Wallace E. Allan ("Allan"); Grant County District Court Judge Janis M. Whitener–Moberg ("Whitener–Moberg"); Grant County ("the County"); Helen Fancher, Leroy Allison, and Tim Snead, personally and in their capacities as members of the Grant County Board of Commissioners ("the Commissioners"), in the Keenans' action relating to Shirley Keenan's ("Keenan's") discharge from her position as Grant County District Court Administrator. The complaint named nineteen causes of action, both state and federal. The district court published a sixty-page opinion dismissing all of Keenan's claims. *See Keenan v. Allan,* 889 F.Supp. 1320, 1339–51 (E.D.Wash. 1995).

Pursuant to our jurisdiction under 28 U.S.C. § 1291, we affirm the district court's opinion subject to the qualifications discussed below.

FACTS AND PROCEDURAL HISTORY

This is a case arising out of a very unpleasant work situation; the unpleasantness is compounded by plaintiffs' aggressive legal tactics, the parties' lengthy briefs, and a voluminous and poorly organized record. While the Keenans argue many irrelevant details, the material facts are not disputed.

Shirley Keenan was hired in 1989 by then-judges Carl Warring and Wallace Allan to serve as District Court Administrator for Grant County District Court in the State of Washington. District judges are elected for

sitting by designation.

four-year terms. Allan served as judge from 1983 to 1994, when he resigned pursuant to a stipulation with the Washington Commission on Judicial Conduct ("the CJC") after a judicial misconduct investigation. *See Keenan,* 889 F.Supp. at 1350. Defendant Judge Janis Whitener–Moberg replaced Judge Warring and joined Allan on the bench in January 1991.

Keenan started her job as administrator in January 1990. Keenan's responsibilities included managing the daily operations of the court and supervising district court employees. She also appears to have worked on Allan's 1990 re-election campaign. In 1991, a number of events transpired to disrupt Keenan's working relationship with the judges. *See id.* at 1339–51 for a detailed description of these events. In June 1991, Allan told Keenan that he and Whitener–Moberg were disappointed in Keenan's performance, citing her inability to handle the new computer system and to get along with staff. *Id.* at 1340. Allan also began sending Keenan notes of reprimand, and on several occasions lost his temper with her, threw papers at her, and called her names: "stupid," "idiot," "bimbo." (CR 192, Ex. 228, in ER Vol. III.) [1]

In September 1991, following complaints and resignations by a number of clerks working under Keenan, the judges relieved Keenan of her personnel duties and directed her to attend a personnel management course. On her return, Keenan sought advice from Whitener–Moberg and Anthony Menke ("Menke"), attorney for Grant County elected officials (including judges), concerning her problems with Allan. According to Keenan, Whitener–Moberg and Menke advised her to file a formal complaint with the CJC, and

assured her that her complaint would be kept confidential and that she need not fear reprisal from Allan. Menke denies having discussed the matter at all with Keenan.

In December 1991, Keenan filed a complaint against Allan with the CJC. In January 1992, Keenan provided the Commission with several documents, including her own 41–page handwritten journal. She states she also gave Menke copies of these documents. In January 1992, Keenan took a medical leave of absence. Shortly after she returned to work, Keenan received a letter from the judges dated March 3, 1992, informing her that her position was being eliminated effective April 30, 1992. The judges stated that they found the court had run well in her absence and that the new computer system and other administrative changes called for restructuring. The judges offered Keenan a lower-paying clerk's position with the court, which she accepted with the proviso that she was " 'not waiving any rights or remedies that I have for violation of my Employment Agreement.' " *See Keenan,* 889 F.Supp. at 1344.

Keenan states in her opening brief that CJC investigator Sally Carter–Dubois ("Carter–Dubois") told her during her leave of absence that Allan had learned of her complaint. She cites to CR 33, a document which does not (at first glance) appear to be included in her five-volume ER. The docket sheet informs us, however, that the document cited is Keenan's own affidavit, filed September 6, 1994, which appears in the ER at CR 192. The statements cited from the affidavit do not support the statement in Keenan's brief.[2]

1. Keenan's brief opens with a recital of indecent and derogatory remarks Allan allegedly made in reference to Keenan and other female employees. These remarks were discovered by Keenan in a redacted document from the CJC's investigatory files which were filed with the district court under seal. Keenan acknowledged in her deposition that she had learned of the statements from the CJC documents, that she had not heard Allan make these remarks, and that she could not identify anyone who had. None of the court clerks deposed at Keenan's instance could recall having heard Allan make profane or otherwise inappropriate remarks. Because the allegations based on information from the CJC documents

are inadmissible evidence, we do not consider them.

2. In her affidavit, Keenan stated that: 1) she learned from an unspecified person during her leave of absence that Allan had learned of her complaint; and 2) an unidentified CJC investigator apologized at an unspecified time "for [Keenan's] name being leaked" to Allan. In her reply brief Keenan proffers the theory that Menke told Allan about the complaint. Keenan's deposition statements contradict the representations in her statement of facts and in her brief. In her deposition, conducted December 7–9, 1994, Keenan stated that she believed Whitener–Moberg had

While serving in the clerk position, Keenan became the union shop steward and filed numerous grievances on behalf of herself and others. Meanwhile, the judges received numerous reports concerning Keenan's misconduct, for which they sanctioned her with a ten-day suspension. On several occasions in 1993, the judges received letters signed by a number of court employees complaining about Keenan's hostile behavior, poor work habits, and "unspeakable" rudeness to co-workers and the public, and demanding that something be done to remedy the situation.

On June 30, 1993, Commissioners Fancher and Snead, responding to complaints by "the majority of [district court] employees," wrote to the judges asking them to address the problem with Keenan. *See Keenan,* 889 F.Supp. at 1347. Several days later, Keenan had an altercation with a co-worker, who complained to the local police department that Keenan had assaulted her. On July 6, 1993, the judges wrote to Keenan, once more suspending her for ten days without pay. On July 15, 1993, Whitener–Moberg wrote to Keenan directing her to attend a pre-discharge meeting on July 21, 1993. On August 20, 1993, following a hearing on August 11, 1993, Whitener–Moberg wrote Keenan informing her that she was terminated from district court employment.

The Keenans filed the instant lawsuit on March 4, 1994, claiming, *inter alia,* breach of contract, retaliatory discharge and sexual harassment, civil rights conspiracy, defamation, emotional distress, violations of the Fair Labor Standards and Consumer Protection Acts, and infringement of Keenan's rights to free speech and due process.[3]

The district court dismissed all of the Keenans' claims with prejudice in its published opinion of May 12, 1995. The Keenans timely appeal.[4]

## DISCUSSION

■ A grant of summary judgment is reviewed *de novo. Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). The appellate court's review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). *Jesinger,* 24 F.3d at 1130. A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Taylor v. List,* 880 F.2d 1040, 1044 (9th Cir.1989); Fed.R.Civ.P. 56(c). Summary judgment may be affirmed on any ground supported by the record. *Rhoden v. United States,* 55 F.3d 428, 431 n. 3 (9th Cir.1995). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

We observe as a preliminary matter that the Keenans' counsel has provided us with an excerpt of record ("ER") that is extraordinarily difficult to use. Most of the pertinent documents are included in "CR 192," which takes up most of three volumes of the ER.

told Allan about the complaint, based on her "gut feeling" and Carter–Dubois's speculation. Later in the deposition, she stated that she believed Allan had learned of her complaint in January based solely on the fact that she lost her position shortly thereafter. She stated that she could not recall anyone having told her that Allan had learned of the complaint during her leave. Finally, Keenan proffers the testimony of Superior Court employee Osborn who stated that Allan learned of the complaint sometime after April 1992 (after the first termination). Allan stated that he learned of the complaint in June 1992 from the CJC.

3. Keenan filed a charge the same day with the Equal Employment Opportunity Commission ("EEOC") alleging sex and age discrimination. Keenan has presented no evidence that a right-to-sue letter was ever issued by the EEOC.

4. The Keenans do not raise all the original causes of action on appeal, but their claims are yet numerous. To the extent that the Keenans attempt to raise new issues on appeal, or fail to raise or properly argue claims on appeal, we deem them waived. *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1424 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995) and —— U.S. ——, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995).

The ER is not paginated, nor is it organized according to date or any other discernible system. An attorney who submits a virtually impenetrable ER does no service to his or her client. The difficulty with the ER in this case is compounded by appellant's briefs, which habitually list multiple citations in lieu of simply stating the material facts disputed on appeal. Where this court has succeeded in locating the documents cited, it has repeatedly found that Keenan has referred us to conclusory allegations made in her own affidavits and statements of fact presented to the district court, and to irrelevant or inadmissible evidence.

As other courts have noted, "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992) ("[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden-for example, by remaining silent-its opportunity is waived and its case wagered."). The Keenans' counsel certainly cannot be accused of remaining silent, but by submitting an ER that obfuscates rather than promotes an understanding of the facts, he has assisted neither the court nor his clients.

After conducting our review in light of the standards listed above, we conclude that Keenan has failed to identify any triable issue of material fact on her remaining issues, and affirm the district court's dismissal of all of Keenan's claims. We take issue with the district court on two points which do not affect the result.

First, with respect to Keenan's promissory estoppel argument, the district court determined that "in wrongful discharge cases promissory estoppel requires [1] ] mutual assent, not a unilateral promise," *Keenan*, 889 F.Supp. at 1385; *and* 2) a " 'clear and definite promise,' " *id.* (quoting *Havens v. C & D Plastics, Inc.*, 124 Wash.2d 158, 876 P.2d 435, 443 (1994)), both of which the district court found lacking.

█ The district court's assertion regarding mutual assent is not supported by the case cited, which plainly states in the context of wrongful discharge that "promissory estoppel does not require mutual assent." *Havens*, 876 P.2d at 443. The district court's second assertion is correct. *Havens* states: "[W]here the terminable at will doctrine is concerned, the promise for promissory estoppel must be a clear and definite promise." *Id.* (quotations omitted).

Keenan argues that the district court erred because under *Greaves v. Medical Imaging Systems, Inc.*, 124 Wash.2d 389, 879 P.2d 276 (1994), "promissory estoppel can apply to breach of employment cases." This is not disputed. Apart from this proposition, however, *Greaves* is of little help to Keenan. *Greaves* reaffirmed the doctrine of promissory estoppel adopted in *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash.2d 255, 616 P.2d 644, 647 (1980):

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Greaves*, 879 P.2d at 281 (quoting the Restatement (Second) of Contracts, § 90 (1981) ("the Restatement")). The court refused to adopt section 139 of the Restatement, which adds that such a promise is enforceable "notwithstanding the statute of frauds." *See id.* at 282 (quoting the Restatement § 139) & n. 29.[5]

█ While it is not entirely clear from *Greaves* whether promissory estoppel may in some cases apply to take a promise out of the statute of frauds,[6] we need not decide the

---

5. The court had considered section 139 in *Klinke*, discussing it in favorable terms, but had declined to adopt it, deeming it unnecessary to resolution of the case before it. *See* 616 P.2d at 260-62.

6. *Greaves'* holding regarding section 139 was ultimately qualified by the phrase "[u]nder the facts of this case." 879 P.2d at 283.

issue here. Keenan has presented no evidence to show that she had a clear and definite promise from anyone, or that she acted or forbore to act in reliance upon any such promise, as required under *Klinke, Havens*, and *Greaves. See Keenan*, 889 F.Supp. at 1383–85.

Second, we disagree with the district court's statement that "[t]here is no right to complain to the [CJC] and so no public policy against retaliation for [ ] complaints [to the CJC]." *Id.* at 1359; *see also id.* at 1370. We note, however, that elsewhere in the opinion the court found that "[t]here is a stated public policy . . . that governmental employees who blow the whistle in good faith should not be subject to retaliation." *Id.* at 1368 (citing RCW 42.41.010). Although the court seemed to remain undecided as to whether making a complaint to the CJC is covered by this policy, *see id.* at 1367, it dismissed Keenan's claim on the basis of its findings that she had not stated a prima facie case or shown that her employers' reasons for eliminating the administrator position were pretextual. *Id.* at 1367–68.[7]

On appeal, Keenan argues only that complaints such as she made to the CJC are covered by state public policy. She does not discuss the district court's conclusions with respect to the infirmities of her prima facie case or her failure to show that defendants' alleged reasons for eliminating her position were pretextual.

Beginning with *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984), the Washington state courts have recognized discharge in violation of public policy as a cause of action. One category of this cause of action involves whistleblowing activity. *See, e.g., Dicomes v. State of Washington*, 113 Wash.2d 612, 782 P.2d 1002, 1007

(1989). The Washington Supreme Court has set out various tests and factors for consideration to determine when such a claim is actionable. In *Dicomes*, the court first noted that in any discharge-in-contravention-of-public-policy case, "the employee has the burden to show that the discharge contravened a clear mandate of public policy." *Id.* 782 P.2d at 1006. In whistleblowing cases, the court looks at "the degree of alleged employer wrongdoing, together with the reasonableness of the manner in which the employee reported, or attempted to remedy, the alleged misconduct." *Id.* 782 P.2d at 1007.[8] "[W]e will [also] consider whether the employer's conduct constituted either a violation of the letter or policy of the law, so long as the employee sought to further the public good, and not merely private or proprietary interests . . . ." *Id.* 782 P.2d at 1008.

In *Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wash.2d 46, 821 P.2d 18, 28–30 (1991), the court set out a burden-shifting analysis, whereby the plaintiff must make a prima facie showing that "his dismissal violates a clear mandate of public policy," which shifts the burden to the employer to articulate valid reasons for the dismissal. The employer's burden at this point is a burden of production, not persuasion. *Id.* 821 P.2d at 28, 29. Finally, the burden shifts back to the employee to show that the employer's articulated reason is pretextual. *Id.* 821 P.2d at 30. The plaintiff must show "by a preponderance of the evidence that retaliation was a substantial or important factor motivating the discharge." *Id.* The plaintiff need not show that retaliation was the *determining* factor. *Id.*

The court recently articulated a new test, advising that its purpose was to clarify and not to change existing common law. *Gardner v. Loomis Armored Inc.*, 128 Wash.2d

---

7. The court properly declined to discuss Keenan's second termination because the common law public policy exception only applies to at-will employees and the second position was one from which she could only be fired for cause. *Id.* at 1367 (citing *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984)).

8. Keenan cites *Shaw v. Housing Auth.*, 75 Wash. App. 755, 880 P.2d 1006, 1010 (1994), rev. denied, 125 Wash.2d 1024, 890 P.2d 464 (1995), for the proposition that these are questions for the

trier of fact. *Shaw* does state this, citing *Dicomes*, but *Shaw*'s citation is incorrect. *Dicomes* decided these issues as a matter of law. *See* 264 Cal.Rptr. at 382–84, 782 P.2d at 623–24. Washington cases decided after *Shaw* clarify that such issues may be determined as a matter of law. *See, e.g., Bott v. Rockwell Int'l*, 80 Wash. App. 326, 908 P.2d 909, 914 (1996); *Gardner v. Loomis Armored Inc.*, 128 Wash.2d 931, 913 P.2d 377 (996).

931, 913 P.2d 377, 382 (sh.1996) (involving armored car driver's breaking work rule to save life of woman held hostage). Under this test,

> (1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element).
>
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element).
>
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).
>
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Id.* (citations omitted).

■ Mindful of the Washington Supreme Court's advisement that the clarity element "should be narrowly construed in order to guard against frivolous lawsuits," *id.* 913 P.2d at 380, we believe that the public policy articulated in RCW 42.41 (encouraging good faith reports of improper governmental action to appropriate governmental bodies) in all likelihood meets this requirement. Because we hold that Keenan failed to show causation or to rebut the defendants' proffer of an alternative "overriding justification" for her dismissal, we do not decide whether Keenan's complaint to the CJC constituted whistleblowing under the statute.[9] Nor do we reach the issue whether Keenan's complaint to the CJC was reasonable under the circumstances and motivated by an interest in the public good, such that discouraging such complaints "would jeopardize the public policy."

To defeat summary judgment, Keenan was required to show that retaliatory animus was a "substantial" motivating factor, even if there were also legitimate reasons for her loss of position. *Wilmot,* 821 P.2d at 30. The judges alleged legitimate reasons for eliminating Keenan's position-they determined an administrator was no longer needed, as her job duties could be performed by DISCIS and Whitener–Moberg, and they were dissatisfied with her performance. Keenan makes no effort on appeal to rebut the judges' proffer. Furthermore, she fails to allege a triable issue of fact as to whether Allan was even aware of her complaint to the CJC prior to the elimination of her position as administrator. In the absence of a prima facie showing of causation, or a showing that retaliatory animus substantially motivated her loss of position, Keenan's claim of retaliatory discharge in violation of public policy cannot survive summary judgment.

Subject to the foregoing remarks, the district court's judgment is affirmed for the reasons stated in its published opinion.

AFFIRMED.

---

9. The district court found that because the whistleblower statute did not go into effect until January 1, 1993, it could not apply to the elimination of the administrator position but only to her suspensions in July 1993 and her termination from the clerk position in August 1993. *See Keenan,* 889 F.Supp. at 1365. Moreover, because the County adopted a program for reporting and adjudicating alleged improper governmental actions in February 1993, in its Resolution 93–5CC, it was exempt from the state statute under section 42.41.050. Keenan disputes that the County's program meets the intent of the state legislation, but proffers no argument in support of this claim. Keenan never brought an action under the County resolution. The district court found, however, that failure to exhaust administrative remedies did not bar her whistleblower claim. *Id.* at 1366.

Whitener-Moberg points to a further reason that the whistleblower statute does not apply to Keenan: the statute protects disclosure of "improper governmental action," which is defined as any action "in violation of any federal, state, or local law or rule, is an abuse of authority, is of substantial and specific danger to the public health or safety, or is a gross waste of public funds." RCW 42.41.020(1)(a)(ii). " 'Improper governmental action' does *not* include personnel actions including but not limited to employee grievances, complaints, [etc.]...." RCW 42.41.020(b) (emphasis added). Because Keenan's complaint to the CJC was a personnel action, Whitener–Moberg argues, it would not be covered by the statute. Since we hold that the Keenans' claim fails regardless of whether the statute applies, we need not decide whether Whitener–Moberg is correct.