William J. GRUTZMACHER, a Nevada Resident, Plaintiff,

v.

The COUNTY OF CLARK, a political subdivision of the State of Nevada; Board of County Commissioners for the County of Clark, Nevada; Yvonne Atkinson Gates, Bruce Woodbury, Lorraine Hunt, Erin Kenny, Mary J. Kincaid, Lance Malone, and Myrna Williams, in their capacity as Commissioners of the County of Clark, and the governing body of McCarran International Airport, Defendants.

No. CV–S–98–01487–PMP (RLH).

United States District Court, D. Nevada.

Jan. 7, 1999.

Michael L. Peters, Gubler & Peters, Las Vegas, NV, for plaintiff.

E. Lee Thomson, Deputy District Attorney, Las Vegas, NV, for defendants.

### ORDER

PRO, District Judge.

Presently before the Court is Plaintiff William J. Grutzmacher's Motion for Summary Judgment and for Injunctive Relief (# 5) filed on November 13, 1998. Defendants The County of Clark, Board of County Commissioners for the County of Clark, Yvonne Atkinson Gates, Bruce Woodbury, Lorraine Hunt, Erin Kenny, Mary J. Kincaid, Lance Malone, and Myrna Williams (collectively "Clark County" or "the County") filed an Opposition to Plaintiff's Motion for Summary Judgment and Preliminary Injunction and Counter–Motion for Summary Judgment (# 6) on November 30, 1998. Clark County filed two Erratas (# 8 and # 9) to correct several clerical errors in their original Opposition and Counter–Motion on December 4, 1998. Grutzmacher filed a Response to Clark County's Opposition and Counter Mo-

tion (# 10) on December 9, 1998. On December 21, 1998, Clark County filed a Reply (# 11).

### I. Factual Background

Clark County owns and operates the McCarran International Airport ("the Airport") through its Department of Aviation. For several years, until 1998, the Airport has contained a holiday display consisting of a Christmas tree, a menorah, and a sign wishing passersby a Happy Chanukah. Grutzmacher wants the display to include a nativity scene.

Nevada law provides that a municipality may build an airport and pay for facilities needed "for any ... use related to the operation of an aviation or air transportation business." Nev.Rev.Stat. § 496.030(1)(d) (1997). In addition, the statute allows municipalities to include facilities related to the "comfort and accommodation of air travelers, and the purchase and sale of supplies, goods and commodities as are incident to the operation of airport properties." *Id.* As provided for in the statute, the Airport contains numerous services including advertising displays, retail shops, restaurants, and other passenger services such as shoe shine stands. All of the structures used for these services are owned by Clark County.[1]

The income provided by these services make up a large portion of the Airport's income and budget. The Airport is not financed by tax revenues, but is funded predominately through user fees. The commercial ventures located in the Airport make up approximately half of the user fees, while fees from airline sources, like landing fees, terminal charges, and gate fees, make up the other half. The airport also receives 12.5% for its funds from a federal grant. The grant requires Clark County to maximize the non-airline revenues produced by the Airport, like the commercial services.

---

1. Grutzmacher claims that the Airport also contains nonprofit booths. As support for his claim, he includes photographs of various facilities located at the airport. (Grutzmacher Supp. Aff.) The list accompanying the photographs states that one such facility is a blood drive aisle dis-

play. (Grutzmacher Supp. Aff.) The language of the list suggests that the airport has a booth dedicated to the blood drive in the aisle, but the photograph only reveals an advertisement for a blood drive located on a Clark County owned advertisement stand.

Clark County allows the public to use the various services offered at the Airport, but access is conditioned on compliance with various regulations governing airport operations. Clark County, Nev., Code § 20–04–030 (1991). One regulation, adopted pursuant to Clark County, Nev., Code § 20–04–020 (1991), prohibits placement of signs or other written material on any surface and prohibits the erection of any "table, chair, mechanical device, or other structure." McCarran Int'l Airport Rules and Regulations, Chap. VI: Non–Commercial/First Amendment Rights Activities, para. H–1 Prohibited Activities, pp. 44–45 (Rev.97–1).

Although the Airport rules do not allow private parties to erect structures, in 1996, the Airport's public area contained a display with a Christmas tree, a menorah, and a sign that stated the following: "Chabad and Clark County Department of Aviation Wish you a Happy Chanukah." The sign also provided that readers could call Chabad for more information.

After seeing the sign, Grutzmacher contacted the Airport and requested that he be allowed to include a creche in the display. In 1997, the Airport officials informed Grutzmacher that he could not include the creche, nor would the 1997 display include a menorah. According to the Director of the Clark County Department of Aviation, Randall H. Walker, he first decided that the 1997 display would not contain the menorah nor the sign from 1996. (Walker Aff. ¶ 26.) He later reconsidered his initial decision and decided to allow the menorah, but not the sign. (Walker Aff. ¶ 26.) During the 1997 holiday season, the Airport employees put up the same display as in 1996, neglecting to remove the Chabad sign. However, the Chabad sign was removed once the Airport supervisory employees discovered the error.

Grutzmacher continued to request to be allowed to erect a creche or to donate a creche for the County to display. The Airport again refused Grutzmacher's request. In 1998, the two holiday displays at the Airport each included a Christmas tree, a menorah, and a sign stating the following: "Clark County Department of Aviation Salutes the Freedom to Celebrate This Season as You Choose, Happy Holidays."

Grutzmacher subsequently filed this suit seeking a declaration from the Court that the Airport's holiday displays violate his freedom of religious expression and speech and the equal protection clause and seeking an injunction to prevent the Airport from denying his request to include a nativity scene in future holiday displays.

## II. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Seaboard Corp.,* 677 F.2d at 1305–06. The substantive law defines which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.* If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 847 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

In his Motion for Summary Judgment and for Injunctive Relief, Grutzmacher argues both that the Airport is acting unconstitutionally by refusing to allow him to display a nativity scene and that the Airport's current holiday display is unconstitutional. Although the two arguments are related, they raise distinct constitutional issues. The argument that the Airport is violating the Constitution by refusing to allow Grutzmacher to display a creche raises issues concerning Grutzmacher's individual rights to free speech and to equal protection. The argument that the current display violates the Constitution raises issues concerning the Establishment Clause. Grutzmacher's Complaint does not raise the Establishment Clause issue, his Motion does because he argues that the Airport is favoring Judaism over Christianity.

Grutzmacher has also brought a Motion for Injunctive Relief. Although he does not specifically bring a motion for a preliminary injunction, Grutzmacher argues for a preliminary injunction in the Motion. Since the Court finds that the County is entitled to summary judgment, it will not address whether Grutzmacher is entitled to either a preliminary or a permanent injunction.

### A. Establishment Clause

■ The Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court announced a test for determining when a government action violates the establishment clause in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). A practice is unconstitutional if it violates any of the following three prongs of the *Lemon* test. *Id.* at 612, 91 S.Ct. 2105. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Id.* (citations omitted). Although the test's future is not certain, the Supreme Court has not overruled the *Lemon* test.[2] The *Lemon* test, therefore, remains the test this Court must use in evaluating whether the County is violating the Establishment Clause. In this case, the Court is only concerned with the second prong of the *Lemon* test because Grutzmacher is arguing that the Airport's holiday display has the effect of favoring Judaism. *See County of Allegheny v. ACLU Greater Pittsburgh Chapter,* 492 U.S. 573, 593, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (noting that endorsing religion has the same meaning as promoting or favoring religion).

A court's initial analysis of whether the Establishment Clause is being violated depends on whether the case involves govern-

---

2. Some commentators speculate that several justices of the current Supreme Court would like the Court to overrule the *Lemon* test. *See* Erwin

Chemerinsky, *Constitutional Law: Policies and Principles* § 12.2.3 (Aspen Law & Bus.1997).

ment or private speech. *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 770, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (plurality finding that purely private speech in a traditional or designated public forum can not violate the Establishment Clause). Only government speech is at issue in this case. Although the Airport's 1996 display indicated that it also contained private speech, the 1998 display is only sponsored by the Clark County Department of Aviation.

A court's analysis of the effects prong of the *Lemon* test can vary with the different approaches used by the members of the Supreme Court. For example, Justice O'Connor considers whether a government action endorses religion. *County of Allegheny*, 492 U.S. at 624–627, 109 S.Ct. 3086 (O'Connor, J. concurring). The Ninth Circuit Court of Appeals has followed the endorsement test. *Alvarado v. City of San Jose*, 94 F.3d 1223, 1231–32 (9th Cir.1996).

■ Therefore, the Court's task in this case is to determine whether the Airport's holiday display of a Christmas tree, a menorah, and a sign saluting the freedom to celebrate the holidays as one chooses violates the Establishment Clause by endorsing religion. In fact, the United States Supreme Court has already answered this question. In *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, six justices of the Supreme Court found that a city's holiday display consisting of a menorah, a Christmas tree, and a sign saluting liberty did not violate the Establishment Clause. 492 U.S. at 620, 632, & 655, 109 S.Ct. 3086. The justices did have differing reasons for their findings. Justices Blackmun and O'Connor found that the display did not lead to the city's endorsement of religion. *Id.* at 620 & 632, 109 S.Ct. 3086. Justices Kennedy, Rehnquist, White, and Scalia found the display valid because the city was not coercing any religious practice. *Id.* at 664, 109 S.Ct. 3086.

Regardless of the reasons, a majority of the Supreme Court found that a display almost exactly the same as the display at issue did not violate the Establishment Clause. The Supreme Court's finding has not been overruled, and this Court is bound by its determination. Therefore, the County's 1998 holiday display does not violate the Establishment Clause.

**B. Free Speech**

■ Grutzmacher contends that by refusing to allow him to display a nativity scene, the County is violating his right to free speech. The extent to which the government can limit access to government property for speech purposes depends on the nature of the government property. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). The government can only exclude speakers from traditional public forums when "exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Id.* at 800, 105 S.Ct. 3439. Similarly, the government can not deny access to a designated public forum without a compelling interest. *Id.* However, the government can deny access to a nonpublic forum if its grounds for doing so are reasonable and do not discriminate based on a particular viewpoint. *Id.*

**1. Forum Analysis**

The Supreme Court has already held that airports are not traditional public fora. *International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). Grutzmacher, however, argues that the County has created a designated public forum at the Airport by opening the Airport to commercial activities. Grutzmacher also maintains that the County's own speech in the public areas of the Airport open the Airport to private speech and create a designated public forum.

■ The Supreme Court has found that whether a government entity creates a designated public forum relates to the entity's intent. *Id.* (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). A government entity can not create a designated public forum through inaction. *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. In considering a government entity's intent

to open a nontraditional forum for public discourse, courts examine the policies and practices of the government. *Id.* Courts can also examine the nature of the property and whether the property is compatible with expression to find the government's intent. *Id.*

■ Grutzmacher first argues that the County's practice of leasing space at the Airport to commercial enterprises evidences an intent by the County to open the Airport to public discourse. Like the McCarran International Airport, the airport considered by the Supreme Court in *Lee* contained commercial businesses such as "restaurants, snack stands, bars, newsstands, and stores of various types." *Lee*, 505 U.S. at 675, 112 S.Ct. 2701. Still, the Court found that the airport had not been intentionally opened for public discourse. *Id.* at 680–81, 112 S.Ct. 2701. Therefore, the fact that an airport allows commercial establishments to operate, without more, does not evidence an intent to allow public discourse.

Grutzmacher cites Justice O'Connor's concurrence in *Lee* as support for his argument that opening the Airport to commercial activities creates a designated public forum. Justice O'Connor did find that the airport at issue in *Lee* was a multi-purpose facility due to its multitude of commercial businesses. *Id.* at 689, 112 S.Ct. 2701. However, Justice O'Connor also found that the airport was not a public forum because the government had not expressly opened the airport to the type of solicitation and leafletting involved in that case. *Id.* at 686, 112 S.Ct. 2701. Justice O'Connor considered the multipurpose nature of the airport important only for her decision concerning whether the government's restrictions in that case were reasonable. *Id.* at 689, 112 S.Ct. 2701. Therefore, Justice O'Connor's opinion does not support Grutzmacher's argument. The existence of commerce at the Airport, without more, does not suggest an intent by the County to create a designated public forum at the Airport. In fact, the Airport regulations prohibiting signs and structures contradicts any intention to open the Airport for public speech.

Grutzmacher claims that the County's own speech provides the needed additional evidence of intent. He contends that by erecting a holiday display, the County opened the Airport to all private holiday displays. Grutzmacher provides no support for this argument. Erecting its own display, while simultaneously prohibiting private displays, does not suggest an intent to open the Airport to private speech. In addition, the Court rejects this argument because finding that a government's own speech can open up a nontraditional forum would lead to absurd results. A government would have to constantly watch what it said on its own property for fear of creating a designated public forum. Since neither commercial businesses nor the government's own speech suggests an intent to create a designated public forum, the Court finds that the Airport is a nonpublic forum.

### 2. Reasonableness Test

■ The government can limit access to a nonpublic forum as long as the limits are reasonable in light of the purpose served by the forum. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.* 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). The limits can be based on speaker identity and on subject matters, as long as the limits are viewpoint neutral. *Id.* In addition, the limits do not need to be the most reasonable limits. *Id.* at 808, 105 S.Ct. 3439.

■ Here, the County limits access to the Airport by not permitting any private structures. According to the County, the purpose of the Airport is the efficient, safe, and comfortable transportation of air passengers. To achieve this purpose, the County needs to keep the Airport's public corridors relatively free from obstructions so passengers can move quickly and safely to and from their airplanes. The County argues the limit prohibiting private structures is reasonable because it allows the County to retain control over the number and size of all displays.

Although this limit might not be the most reasonable method for controlling Airport obstructions, the Court agrees that the limit is reasonable in this case. The Airport contains limited space, and numerous private individuals and groups might presumably want to erect displays. Requiring that the

County own all structures provides a viewpoint neutral way for the County to effectively control potential obstructions.

The Seventh Circuit Court of Appeals has previously considered a similar issue and found the regulation at issue constitutional. *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 346–48 (7th Cir.1990). In *Lubavitch*, the regulation at issue prohibited private placement of structures in non-leased spaces. *Id.* at 346. At the time the case was decided, courts considered airports to be public fora, so regulations limiting access had to be content neutral, time, place and manner restrictions, narrowly tailored to promote a government interest. *Id.* The court found that the regulation was a valid restriction given the limited space at the airport and the need to move people efficiently through the airport. *Id.* at 347.

Additionally, in keeping with the Airport's purpose to promote travel, the County has in interest in making air travel as inexpensive as possible. For example, the County must maximize commercial revenues to obtain federal grant money. The more nonairline revenues the Airport receives, the less airline revenues it needs. Travel is thus cheaper for travelers because airlines would likely pass higher airport fees on to the travelers. Limiting public speech to leased spaces is a reasonable way for the County to help keep air travel less expensive for the traveler.

Notably, Grutzmacher does not raise any arguments in opposition to the County's reasonableness analysis other than to argue that the County action is not reasonable because it favors Judaism, a contention already rejected by this Court. Therefore, the Court finds that the regulation prohibiting private structures at the Airport to be reasonable.

## C. Equal Protection

 Grutzmacher also maintains that by refusing to allow him to display a creche at the Airport, the County is denying him equal protection because they are displaying a menorah. According to the Supreme Court, "[w]hen government regulation discriminates among speechrelated activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tai-lored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown*, 447 U.S. 455, 462–62, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). However, in this case, the Court has already determined that the Airport is not a public forum and that there is no First Amendment violation. Therefore, the County's regulation prohibiting private structures, but allowing public structures does not violate the Equal Protection Clause if it is rationally related to legitimate government purpose. *General Media Communications, Inc. v. Cohen*, 131 F.3d 273, 285 (2nd Cir.1997) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 55, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).

The County has a legitimate need to keep the Airport free from congestion and possible obstructions. A regulation prohibiting private structures is rationally related to this need because it allows the County to have control over all obstructions. Therefore, the classification is this case does not violate equal protection.

IT IS THEREFORE ORDERED that Plaintiff William J. Grutzmacher's Motion for Summary Judgment and for Injunctive Relief (# 5) is DENIED.

IT IS FURTHER ORDERED that Defendants County of Clark, Board of County Commissioners for the County of Clark, Yvonne Atkinson Gates, Bruce Woodbury, Lorraine Hunt, Erin Kenny, Mary J. Kincaid, Lance Malone, and Myrna Williams' Cross–Motion for Summary Judgment (# 6) is GRANTED, and that Judgment is hereby entered in favor of Defendants and against Plaintiff.