**Bonifacio DIZON**

**v.**

**ASIANA AIRLINES, INC.**

**CV 16–01376–BRO (MRWx)**

United States District Court,
C.D. California.

Filed 03/06/2017

---

Frank Phillip Agello, Raj D. Roy, Roy Legal Group, Northridge, CA, for Bonifacio Dizon.

Jennifer J. Johnston, Michael Cutler, Richard A. Lazenby, Condon and Forsyth LLP, Los Angeles, CA, for Asiana Airlines, Inc.

## ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### [25]

BEVERLY REDD O'CONNELL, United States District Judge

## I. INTRODUCTION

Currently pending before the Court is Defendant Asiana Airlines, Inc.'s ("Defen-

dant") Motion for Summary Judgment. (Dkt. No. 25 (hereinafter, "Mot.").) After considering the papers in support of and in opposition to the instant Motion, as well as oral argument of counsel, Defendant's Motion is **GRANTED.**

## II. FACTUAL BACKGROUND

On March 3, 2015, Plaintiff Bonifacio Dizon ("Plaintiff") took the return leg of a roundtrip flight from Los Angeles, California, to the Manila, Philippines, with a layover in Incheon, South Korea. (Dkt. No. 27–4 (hereinafter, "SUF") ¶ 1.)[1] Plaintiff did not reserve any disability assistance before his flight. (SUF ¶ 2.) Approximately halfway through the flight from Manila to Incheon, Plaintiff began to experience pain in his knee, and was given Tylenol by the flight crew. (SUF ¶¶ 4–5.) Plaintiff asked the flight crew if there was a nurse or physician on board the flight, but does not recall the crew's response to his request or whether they searched for a medical professional on board. (SUF ¶ 6.)[2] In addition, Plaintiff does not recall asking the cabin crew to take him to a hospital, though he was provided with wheelchair assistance when exiting the aircraft in Incheon and throughout his layover there. (SUF ¶¶ 8, 10.) According to Plaintiff, he made repeated requests for assistance and "cries for help" that went unanswered by the flight crew. (SUF ¶ 13.)

While in Incheon, Plaintiff does not recall asking anyone for medical assistance because he was afraid he would be required to pay the medical expenses. (SUF ¶ 11.) Plaintiff then boarded the flight from Incheon to Los Angeles, though he did not

---

1. The Court cites Dkt. No. 27–4 when referring to the parties' Statement of Undisputed Facts. This documents includes both Defendant's proffered facts as well as Plaintiff's responses to those facts.

2. For several of Defendant's proffered undisputed facts. Plaintiff admits the fact, but denies "the implication" he claims is associated with the fact. (See, e.g., SUF ¶ 2.) Denying an implication is, effectively, argument. Accordingly, as Plaintiff admits the fact, the Court considers these facts undisputed, though it separately considers the parties' arguments based on these facts contained in their motion papers.

ask for disability accommodations because he did not believe such a request was required when he was visibly in pain. (SUF ¶ 14.) On the flight, Plaintiff asked for and was provided with another Tylenol to help alleviate his pain. (SUF ¶ 16.) According to Defendant, Plaintiff's flight arrived in Los Angeles at approximately 1:40 p.m. on March 3, 2015.[3] (SUF ¶ 17.) Plaintiff was provided with wheelchair assistance from the time he exited the plane until he reached the baggage claim. (SUF ¶¶ 18–19.) Plaintiff does not recall asking for medical assistance upon landing in Los Angeles, and the flight crew did not call him an ambulance or provide him with any other medical assistance. (SUF ¶ 20.)

Plaintiff's friend picked him up from LAX airport. (SUF ¶ 21.) Plaintiff did not ask his friend to take him to a medical provider, because he did not want to be a burden, and he believed the best course of action was to go home, rest, and continue to take Tylenol. (*Id.*) On March 6, 2015, Plaintiff's wife drove him to Kaiser Permanente, Panorama City for treatment. (SUF ¶ 25.) Plaintiff does not recall seeking medical treatment between when he landed on March 3, 2015, and when he ultimately was taken to the hospital. (*See* SUF ¶¶ 23–25.) Plaintiff was ultimately diagnosed with deep vein thrombosis ("DVT").[4] (*See* Declaration of Bonifacio Dizon (Dkt. No. 27–2) (hereinafter, "Dizon Decl.") ¶ 26.) He was admitted to Kaiser Hospital and stayed there for approximately two months. (Dizon Decl. ¶ 27.)

## III. PROCEDURAL HISTORY

Plaintiff first filed this action on February 26, 2016. (Dkt. No. 1 (hereinafter, "Compl.").) Plaintiff brings three causes of action: (1) violation of the Montreal Con-

vention; (2) negligence; and, (3) intentional infliction of emotional distress. (*See id.*) Defendant filed the instant Motion on December 16, 2016. (*See* Mot.) On February 6, 2017, Plaintiff timely filed his Opposition. (Dkt. No. 27 (hereinafter, "Opp'n").) On February 13, 2017, Defendant timely replied. (Dkt. No. 28.) The Court held a hearing on Defendant's Motion on February 27, 2017. (*See* Dkt. No. 30.)

## IV. LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that

---

3. Plaintiff does not recall what time his flight landed on March 3, 2015. (SUF ¶ 17.) This fact is not material.

4. "DVT is a condition that occurs when a blood clot forms in a deep vein." *Rodriguez v. Ansett Austl. Ltd.*, 383 F.3d 914, 915 n.1 (9th Cir. 2004).

show a genuine issue for trial. *Id.* at 587, 106 S.Ct. 1348. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

■ A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The district court is "not required to comb the record to find some reason to deny a motion for summary judgment." *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *see also Carmen v.*

*S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253, 106 S.Ct. 2505.

## V. DISCUSSION

Defendant argues that they are entitled to summary judgment on Plaintiff's claim under the Montreal Convention and that the Montreal Convention preempts Plaintiff's state law claims. (*See* Mot.) Plaintiff contends that Defendant has failed to meet its burden of establishing that there is no triable issue of fact and that his state law claims survive. (*See* Opp'n.) The Court will address each argument in turn.

### A. Plaintiff's Montreal Convention Claim

■ Plaintiff's first cause of action arises under the terms of the Montreal Convention.[5] (*See* Compl.) "Article 17 of the Warsaw Convention[6] ... imposes lia-

---

5. Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter, the "Montreal Convention").

6. "The Montreal Convention is the successor to the Warsaw Convention of 1929." *Narayana v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014); *see also* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (hereinafter,

bility on an air carrier for a passenger's death or bodily injury caused by an 'accident' that occurred in connection with an international flight." *Olympic Airways v. Husain,* 540 U.S. 644, 646, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2004) (footnote omitted). Article 17(1) of the Montreal Convention "provides that a carrier is 'liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft of in the course of any of the operations of embarking or disembarking.'" *Narayanan,* 747 F.3d at 1127 (quoting Montreal Convention, art. 17(1)). Thus, there are three elements to a claim arising under Article 17: (1) there has been an accident; (2) that caused the passenger's injuries; and, (3) the accident occurred while on board the aircraft or in the course of embarking or disembarking the aircraft. *See E. Airlines, Inc. v. Floyd,* 499 U.S. 530, 535–36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). The parties agree that the third element is met here, but Defendant argues that Plaintiff cannot establish the first two elements of his claim.

### 1. Whether Plaintiff Suffered an "Accident"

█ An "accident" is defined as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); *accord Naranyan,* 747 F.3d at 1127. "This defini-

tion should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries."[7] *Saks,* 470 U.S. at 405, 105 S.Ct. 1338. But, "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 ... cannot apply." *Id.* at 406, 105 S.Ct. 1338.

█ Defendant argues that Plaintiff's DVT and the injuries it caused are not an "accident" under the Montreal Convention, because it was the result of normal and expected operations of the aircraft. (*See* Mot. at 12–13.) Plaintiff contends that Defendant improperly focuses exclusively on the DVT, while ignoring other links in the causal chain of Plaintiff's injuries, including the alleged inaction of Defendant's flight crew when responding to Plaintiff's requests for assistance. (*See* Opp'n at 8–9.)

The Supreme Court has held that a flight attendant's failure to act may constitute an accident under the Montreal Convention. *Husain,* 540 U.S. at 654–55, 124 S.Ct. 1221 ("The rejection of an explicit request for assistance would be an 'event' or 'happening' under the ordinary and usual definition of these terms."). In *Husain,* a flight attendant ignored the complaints of an airline passenger who was asthmatic and allergic to smoke but was seated approximately three rows in front of the smoking section of the passenger compartment. *See id.* at 647–48, 124 S.Ct. 1221.

the "Warsaw Convention"). Though it was "designed to replace the Warsaw Convention, the Montreal Convention incorporates many of its substantive provisions." *Id.* "Accordingly, in interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same." *Id.* Article 17 of the Warsaw Convention and Article 17 of the Montreal Provision, which govern injury to passengers, are substantively the same. *Com-*

*pare* Warsaw Convention, art. 17 *with* Montreal Convention, art. 17; *see also Narayanan,* 747 F.3d at 1127 (relying on Warsaw Convention precedent when analyzing Article 17 of the Montreal Convention).

7. In addition, "[i]n cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Saks,* 470 U.S. at 405, 105 S.Ct. 1338.

After the area in which the passenger was sitting began to fill with "ambient cigarette smoke," the passenger's wife approached a flight attendant and informed her that her husband could not remain seated where he was seated. *Id.* The flight attendant responded that she could not move the passenger because the plane was "totally full" and she was "too busy." *Id.* at 647, 124 S.Ct. 1221. The passenger eventually got up to try to find fresher air, was given two shots of epinephrine, and ultimately passed away on the flight. *Id.* at 648, 124 S.Ct. 1221. The Court held that the carrier could be held liable under the Montreal Convention, because the flight attendant's refusal to reseat the passenger was a "link in the chain" that ultimately led to his death, though the ambient smoke in the cabin was also a cause. *See id.* at 653–54, 124 S.Ct. 1221.

In contrast, in *Saks*, a passenger sued a carrier for injuries she suffered during landing. *See Saks*, 470 U.S. at 394–95, 105 S.Ct. 1338. As the aircraft descended into Los Angeles, the passenger "felt severe pressure and pain in her left ear." *Id.* at 394, 105 S.Ct. 1338. The pain continued after the plane landed, but she disembarked without informing any member of the crew or an airline employee of the injury. *Id.* Several days later, the passenger consulted a doctor who concluded that she had become permanently deaf in her left ear. *Id.* The passenger argued that "her hearing loss was caused by negligent maintenance and operation of the jetliner's pressurization system." *Id.* The Court held that though "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger," because the passenger's reaction was her "own internal reaction to the usual, normal, and expected operation of the aircraft," the carrier could not be held liable. *Id.* at 406, 105 S.Ct. 1338.

More recently, in *Rodriguez*, a passenger brought suit against an airline carrier after she suffered DVT while on board a flight. *See Rodriguez*, 383 F.3d at 915–16. The Court specifically rejected the proposition that development of DVT may be considered an "accident" under the Warsaw Convention. *See id.* at 917 ("Rodriguez's DVT clearly is the type of internal reaction to the normal operation of the aircraft, with no unusual external event, that is not an accident under *Saks*."). Because the passenger had not informed flight crew of her injury, her case involved no response from the flight crew. *Id.* at 918. Accordingly, the court distinguished cases where the court had found an accident occurred when a flight crew "failed to comply with the airline's operational standards." *Id.* (noting that *Husain* "involved a response by the flight crew to the passenger's medical condition" and finding that "in the instant case, there was no response by the flight crew that may or may not have violated the industry standards"). In addition, the court held that the airline could not be held liable for inadequately failing to warn about the dangers of DVT because the passenger "submitted no information regarding whether there was either an industry practice or [a carrier] policy to warn of DVT at the time of her flight." *Id.*

As the Ninth Circuit held in *Rodriguez*, the development of DVT cannot be considered an "accident" under the Montreal Convention, because it is an injury that arises due to the normal and expected operation of the aircraft. However, Plaintiff does not argue that it was the development of his DVT that constitutes an "accident," but the flight crew's failure to adequately attend to his medical needs. (*See* Opp'n at 9–10.) The facts of Plaintiff's case fall directly in the area between *Husain* and *Rodriguez*. In *Rodriguez*, the plaintiff failed to inform the flight crew of her injury; thus, the carrier could not be

held liable. Here, Plaintiff did inform the flight crew that he was in pain, and he argues that it was the crew's inaction that led to the worsening of his injury. But, unlike *Husain*, where the Court held that the flight attendant's failure to take *any* action to assist the passenger was unexpected or unusual. Plaintiff concedes that the flight crew here assisted him by providing him with Tylenol and wheelchair assistance, but that their assistance was inadequate, bringing it outside the realm of the normal and expected operation of the aircraft. Therefore, the question becomes whether the flight crew's actions in this case when responding to Plaintiff's medical needs were "unexpected or unusual."

■ Courts often look "to industry standards as well as airline policies and procedures in determining whether an event was 'unexpected or unusual.'" *Sook Jung Lee v. Korean Air Lines Co.*, No. SACV 10-01709-JVS (MLGx), 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012). In *Sook Jung Lee*, a plaintiff brought a claim similar to the instant case, arguing that a flight crew's medical treatment of the plaintiff was insufficient. *Id.* at *2–*3. There, it was discovered that the plaintiff had suffered a stroke during a flight, leading the flight crew to follow its procedures for responding to an in-flight emergency, including notifying the flight crew, checking the plaintiff's condition, paging any doctor on board, and checking the plaintiff's baggage for any possible medication. *Id.* at *2. The court ultimately granted summary judgment for defendant because the plaintiff "failed to proffer any evidence of industry standards" that the flight crew should have but failed to follow which would have made their treatment of plain-

tiff "unexpected or unusual." *Id.* at *6–*7; *see also Aziz v. Air India Ltd.*, 658 F.Supp.2d 1144, 1154–55 (C.D. Cal. 2009) (granting summary judgment in favor of defendant and finding there was no accident where plaintiff "failed to proffer *any* evidence establishing that there was in fact an industry standard" to provide medical equipment on board an international flight (emphasis in original)); *Fulop v. Maiev Hungarian Airlines*, 175 F.Supp.2d 651, 665 (S.D.N.Y. 2001) ("Any major deviation from a standard articulated in recognized practices and procedures represents the exceptional case—the unusual or unexpected happening.").

The Court finds that Plaintiff has failed to establish that Defendant's flight crew's reaction was so insufficient as to be considered an "unusual or unexpected" event. Unlike in *Husain*, as noted above, where a flight attendant altogether ignored requests of a passenger to reseat him leading to the passenger's death, here, the flight crew *did* respond to Plaintiff's request for assistance and exclamations of pain. (*See, e.g.*, SUF ¶ 5.) Though Plaintiff argues that Defendant's "cabin crew ignored Plaintiff's requests for assistance during his flights and failed to act on his requests," Plaintiff admits that they provided him Tylenol and that he was given wheelchair assistance boarding and exiting the plane. (*See* SUF ¶¶ 5, 10.) Further, while in his Opposition Plaintiff claims that the flight crew ignored his request to determine whether there was a nurse or physician on board, Plaintiff testified at his deposition that he *did not recall* what the flight attendant's response was or whether the flight attendant made any effort to determine whether there was a medical professional on board.[8] (*See* Deposition of

---

**8.** In his Declaration submitted along with his Opposition, Plaintiff testifies that "[t]here was no announcement over the public address (PA) system within the plane asking whether a physician or muse was on board who could

help me with my severe pain." (Dizon Decl. ¶ 7.) The Court need not consider whether this assertion contradicts his deposition testimony, however, because regardless. Plaintiff

Bonifacio Dizon (Dkt. No. 27–1) (hereinafter, "Dizon Dep.") at 117:7–15.) Thus, there is no evidence currently before the Court that the flight crew altogether *ignored* Plaintiff's requests for help.[9]

Moreover, like in *Sook Jung Lee and Aziz*, Plaintiff has provided no evidence, other than his own belief, that it would be "usual" or "expected" for a flight crew to offer more assistance than providing a painkiller and assisting a passenger in boarding or exiting an aircraft who was experiencing generalized symptoms of pain. But the Court does not view the evidence from Plaintiff's perspective—it examines the circumstances objectively. *See Fulop*, 175 F.Supp.2d at 665 (explaining that *Saks* requires the court to view the circumstances objectively). Though neither party has proffered any evidence

of industry standards or of Defendant's practices or procedures,[10] when, as here, a defendant moves for summary judgment arguing that Plaintiff has failed to meet its burden of establishing an element of its claim, (*see* Mot. at 17 ("Plaintiff cannot point to a single action by Asiana that was objectively 'unusual' or 'unexpected' under the circumstances.")), the burden shifts to Plaintiff to provide evidence sufficient to create a triable issue of fact,[11] *see Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Therefore, as this case—unlike *Husain*—is one where Defendant's flight crew took *some* action (even if Plaintiff now claims that action was insuffi-

has failed to provide evidence sufficient to create a triable issue of fact suggesting that the flight crew failed to act in line with industry standards or its own practices. For example, Plaintiff provides no evidence that the flight industry has a standard of paging a medical professional every time a customer asks for one if the flight attendant does not believe it is otherwise required. In any event, as determined below, Plaintiff has failed to establish a triable issue of fact regarding causation, as well.

9. The parties disagreed at oral argument as to whether Plaintiff ever explicitly asked for medical assistance. According to the portion of his deposition Plaintiff's counsel cited at the hearing, Plaintiff asked the head stewardess whether "they have a physician on board or even a muse to understand the pain that I am experiencing on my leg." (*See* Dizon Dep. at 115:12–14.) This appears to be the only request that Plaintiff made.

10. At oral argument, defense counsel explained that the flight crew's reaction was in line with Defendant's practices. According to defense counsel, when a passenger complains of a medical condition during a flight, the flight attendant is required to evaluate the situation and act appropriately based on the circumstances. If the flight attendant believes

that the medical condition requires a doctor's attention, he or she documents the incident. Apparently, Defendant has no such documentation in this case, suggesting that the flight attendant believed Plaintiff's complaints were not so serious as to require further medical attention and that the flight crew acted in line with its own practices.

11. Plaintiff repeatedly claims that it is Defendant's burden on summary judgment to "negate" Plaintiff's claims. (*See, e.g.,* Opp'n at 11, 14, 15.) However, Plaintiff relies on California law for this proposition. (*See* Opp'n at 5–6 (citing *Mann v. Cracchiolo*, 38 Cal.3d 18, 35, 210 Cal.Rptr. 762, 694 P.2d 1134 (Cal. 1985); *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal.4th 992, 1000, 35 Cal.Rptr.2d 685, 884 P.2d 142 (Cal. 1994)).) But this Court is governed by Federal Rule of Civil Procedure 56 on summary judgment—not California law. *See Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). Therefore, Plaintiff's citations to California law are unavailing, and the Court finds that, under the Supreme Court's guidance in *Celotex Corp.*, Defendant may meet its burden on summary judgment without affirmatively negating every element of Plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.

cient), and Plaintiff provides no evidence indicating that this action was unexpected or unusual based on industry standards or Defendant's own practices, the Court finds that there is no issue of material fact as to whether the event constitutes an accident, and Defendant is entitled to summary judgment.

### 2. Whether Plaintiff Established Proximate Causation

■ Defendant also argues that, even assuming the flight crew's reaction to Plaintiff's medical needs constitutes an "accident," Plaintiff has failed to establish how Defendant's conduct was the proximate cause of his injuries (or the worsening of his injuries). As the Supreme Court explained in *Saks*, "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Saks*, 470 U.S. at 406, 105 S.Ct. 1338. Here, Defendant argues that Plaintiff has provided no evidence indicating that the flight crew's reaction to his DVT caused or worsened his injury. Plaintiff does not argue otherwise in his Opposition, but states only that "the parties are still exchanging discovery requests and responses," and that "Plaintiff reserves the right to present further evidence of causation, including expert testimony, at the time of trial." [12] (Opp'n at 15.) However, Plaintiff cannot avoid his burden on summary judgment by averring that he will obtain the necessary evidence before trial; rather, it is his burden at the summary judgment stage to present evidence sufficient to create a triable issue of fact. *See* Fed. R. Civ. P. 56(e) (providing that the court may grant summary judgment if a party "fails to properly support an asser-

tion of fact or fails to properly address another party's assertion of fact").

Based on the evidence currently before the Court, Plaintiff has failed to establish that Defendant's actions (through its flight crew) caused or worsened Plaintiff's injury in any way. Plaintiff has not indicated that he would not have suffered DVT if the flight crew had acted differently, or that his injuries would have been in any way reduced had the flight crew acted differently. In fact, at his deposition, Plaintiff testified that he did not recall if any medical provider has ever told him that his injuries were caused or exacerbated by Defendant's actions (or inaction). (*See* SUF ¶ 26; *see also* Dkt. No. 25–3 at 186:24–187:11.) Therefore, Plaintiff has failed to present evidence sufficient to create a triable issue of fact that Defendant's conduct was a link in the causal chain of Plaintiff's injury. *See Jacob v. Korean Air Lines Co.*, 606 Fed.Appx. 478, 481 (11th Cir. 2015) (affirming district court's grant of summary judgment for defendant where the plaintiff failed to present any medical evidence indicating that carrier's actions caused or worsened his injuries).

### B. Whether the Montreal Convention Preempts Plaintiff's Other Claims

■ Defendant argues that the Montreal Convention is Plaintiff's sole means of recovery and, because he cannot state claim under the Montreal Convention, he is prevented from recovering for his state law claims. (*See* Mot. at 10–11.) Plaintiff disagrees. (*See* Opp'n at 19–22.) Article 29 of the Montreal Convention provides in relevant part:

> In the carriage of passengers, baggage and cargo, any action for damages, how-

---

12. It is unclear, however, how further discovery would assist Plaintiff in meeting his burden of establishing causation. Nor could Plaintiff point to any specific discovery he requested to conduct.

ever founded, whether under this Convention or in contract or in tort or otherwise, *can only be brought* subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

Montreal Convention, art. 29 (emphasis added). Thus, Defendant claims that, if recovery is not allowable under the Convention, Plaintiff "cannot recover at all." (Mot. at 10.)

The Supreme Court held has held the same. "[R]ecovery for a personal injury suffered 'on board an aircraft or in the course of any of the operations of embarking or disembarking', if not allowed under the Convention, is not available at all." *El AI Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (alteration and citation omitted). Nonetheless, Plaintiff argues that Defendant's "position is, at best, an open debate among various courts throughout the country." (Opp'n at 19.)

However, the authority Plaintiff cites regards complete preemption—i.e., whether a plaintiff must bring a claim under the Montreal Convention in federal court—a different issue than federal preemption—i.e., whether a plaintiff's state law cause of action may proceed when his Montreal Convention claim fails. *See, e.g., Serrano v. Am. Airlines, Inc.*, No. CV 08–2256 AHM (FFMx), 2008 WL 2117239, at *7 (C.D. Cal. May 15, 2008) (addressing complete preemption—i.e., whether a plaintiff was entitled to bring his claims against an airline in state court). In fact, the authority Plaintiff cites addresses the exact distinction at issue here. In *Serrano*, the court explained that "[t]he Supreme Court held 'that the Warsaw Convention precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention.'" *Id.* at *4 (quoting *Tseng*, 525 U.S. at 176, 119 S.Ct. 662). Thus, "*Tseng* involve[d] only a discussion of '*federal* preemption,'" a different issue than *complete* preemption—which Plaintiff discusses.[13] *Id.* at *5 (emphasis added).

For example, in *Tseng*, a plaintiff brought suit against a carrier after she was stopped going through security, ranked as a "high risk" passenger, and subjected to a body search. *See Tseng*, 525 U.S. at 163–64, 119 S.Ct. 662. Plaintiff brought state law claims for, among other things, assault and false imprisonment. *Id.* at 164, 119 S.Ct. 662. The Court held that the Warsaw Convention did not allow for recovery on her assault and false imprisonment claims because Article 17 does not allow for recovery of "solely psychic or psychosomatic injuries." *Id.* at 172, 119 S.Ct. 662. In addition, the Court held that the Warsaw Convention was an exclusive remedy and "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention." *Id.* at 176, 119 S.Ct. 662. Thus, the plaintiff was unable to

---

**13.** At oral argument, Plaintiff's counsel indicated for the first time that he believed Plaintiff's negligence claim arose from conduct not preempted by the Montreal Convention because it occurred once Defendant had disembarked from the plane in Los Angeles. Plaintiff's counsel failed to clearly articulate what that alleged negligence was, however. Moreover, as determined above, any claim for negligence that is not preempted by the Montreal Convention would fail regardless as Plaintiff has not provided evidence creating a Triable issue of fact as to causation.

maintain her assault and false imprisonment state law claims as well. *See id.*

The Supreme Court has definitively held that when a plaintiff has failed to establish the requisite conditions for liability under the Montreal Convention, his state law claims are also barred. *See Tseng*, 525 U.S. at 176, 119 S.Ct. 662. As the Court has determined above that Plaintiff has failed to establish the existence of an "accident" or the requisite causation sufficient to establish liability under the Montreal Convention, his state law negligence and intentional infliction of emotional distress claims may not proceed.

## VI. CONCLUSION

For the foregoing reasons. Defendant's Motion is **GRANTED**. Defendant is **ORDERED** to submit a Proposed Judgment complying with the terms of this Order no later than **Friday, March 17, 2017 at 4:00 p.m.**

IT IS SO ORDERED